******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THOMAS VENTURA *v.* TOWN OF
# EAST HAVEN ET AL.
## (SC 19898)

Palmer, McDonald, Robinson, Kahn and DiPentima, Js.*

*Syllabus*

Pursuant to statute (§ 52-557n [a]), a municipality shall be liable for damages to a person caused by the negligent acts or omissions of any employee of such municipality acting within the scope of his employment or official duties, unless those negligent acts or omissions require the exercise of judgment or discretion.

The plaintiff sought to recover damages from the defendant, the town of East Haven, for personal injuries he sustained when he was struck by a vehicle driven by a third party, T. T had been detained prior to the accident by S, a town police officer, in response to a 911 call concerning a possible domestic violence incident involving T and his girlfriend while they were in T's vehicle in a restaurant parking lot. Although S determined that there was no probable cause for arrest in connection with that incident, he was unable to determine if T or his girlfriend had valid driver's licenses. S instructed T to park his vehicle in the restaurant parking lot but to take his keys, and thereafter drove T home. T, however, returned to the parking lot, retrieved his vehicle and, shortly thereafter, struck the plaintiff. It was later determined that T had been operating the vehicle in violation of several motor vehicle laws, including operating a motor vehicle without valid insurance or registration. The plaintiff alleged that S violated a ministerial duty imposed on him by the town police department's tow board rules and regulations by failing to have T's vehicle towed and impounded so that T could not return and operate it unlawfully. The tow rules provide, inter alia, that it is within an officer's discretion to direct the towing of a motor vehicle and that "all motor vehicle violations," including operating an unregistered motor vehicle, "are to be towed . . . ." The town claimed in its motion for a directed verdict that an officer's decision to tow is a discretionary act and, therefore, that the town was protected by governmental immunity pursuant to § 52-557n (a). The jury returned a verdict for the plaintiff, and the trial court denied the town's motions for a directed verdict and to set aside the verdict and rendered judgment for the plaintiff. Thereafter, the town appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had denied its motion for a directed verdict on the basis of governmental immunity. The Appellate Court concluded, inter alia, that the tow rules, by their express and unambiguous terms, did not purport to impose on town police officers a ministerial duty to tow the vehicles of all drivers who have violated the state's motor vehicle laws but were promulgated solely for the purpose of clarifying the responsibilities of towing companies seeking to do business with the town police department. The Appellate Court also rejected the plaintiff's contention that the jury could have relied on the testimony of two police officers to find that the tow rules imposed a ministerial duty on police officers to tow particular vehicles, observing that the plaintiff had ignored the officers' unequivocal testimony that the decision to tow a vehicle is always within the officer's discretion. The Appellate Court reversed the trial court's judgment and remanded the case to that court with direction to grant the town's motion for a directed verdict and to render judgment for the town, and the plaintiff, on the granting of certification, appealed to this court. *Held* that the Appellate Court correctly determined that the plaintiff's action against the town was foreclosed by governmental immunity and, thus, properly reversed the trial court's judgment and directed that court to render judgment for the town:

1. The Appellate Court correctly determined that the issue of whether the town's tow rules imposed a ministerial duty on S to have T's vehicle towed was a question of law for resolution by the court that is subject to plenary review on appeal and was not a question of fact for the jury; this court reaffirmed its long-standing practice of deciding the issue of governmental immunity as a matter of law, as the issue of whether a

statute, regulation or other provision of law imposes a ministerial duty on a municipal official, on which governmental immunity depends, ordinarily presents a question of law to be decided by the court, and insofar as language in *Lombard* v. *Edward J. Peters, Jr., P.C.* (252 Conn. 623) and its progeny indicated otherwise, that language was expressly disavowed.

2. The Appellate Court correctly concluded that the town's tow rules did not apply to town police officers but were written solely to regulate tow truck companies and their operators doing business with the town, and, accordingly, S did not have a ministerial duty to have T's vehicle towed: the plain language of the tow rules was directed at tow truck companies or their operators rather than the town police officers, the memorandum that accompanied the tow rules stated that all establishments that provided towing services for the town police department were required to adhere to the tow rules, and the Appellate Court's interpretation of those rules was supported by the testimony of every witness with knowledge of the rules, including the testimony of the plaintiff's expert; furthermore, the Appellate Court's interpretation of the tow rules avoided the absurd and unworkable result that would occur if town police officers were required to tow and impound the vehicle of every driver who committed a minor motor vehicle infraction, such as failing to use a turn signal or driving in excess of the speed limit.

3. The plaintiff could not prevail on his claim that the jury reasonably could have found, solely on the basis of the testimony of E, the police officer designated by the town as the person most knowledgeable about the police department's rules and procedures, that S had a ministerial duty to have T's vehicle towed, independent of any duty allegedly imposed on him by the tow rules, E having testified unequivocally that there was no rule, written or unwritten, directing the manner in which a town police officer must handle an unregistered vehicle; moreover, there was no merit to the plaintiff's claim that the jury could have reasonably rejected E's testimony regarding the discretionary nature of the decision to tow and concluded that a ministerial duty existed on the basis of E's testimony that it was the general practice in the town to have unregistered vehicles towed and that it was his practice as well, as the mere fact that an officer, either by training or experience, ordinarily responds to a situation in a particular manner does not transform that response into a ministerial duty, and E's testimony fell short of establishing the existence of a ministerial rule dictating the manner in which such vehicles are to be handled in every instance.

Argued April 2, 2018—officially released January 22, 2019

*Procedural History*

Action to recover damages for the alleged negligence of the defendants, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the complaint was withdrawn as to the defendant Jeffrey R. Strand; thereafter, the case was tried to the jury before *Wilson, J.*; verdict for the plaintiff; subsequently, the court denied the named defendant's motions for a directed verdict and to set aside the verdict, and rendered judgment for the plaintiff; thereafter, the court granted in part the named defendant's motions for remittitur and for a collateral source reduction, and the named defendant appealed to the Appellate Court, *Keller, Prescott* and *West, Js.*, which reversed the trial court's judgment and remanded the case to that court with direction to grant the named defendant's motion for a directed verdict and to render judgment for the named defendant, and the plaintiff, on the granting of certification, appealed to this court. *Affirmed.*

*James J. Healy*, with whom was *Joel T. Faxon*, for the appellant (plaintiff).

*Aaron S. Bayer*, with whom was *Tadhg Dooley*, for

the appellee (named defendant).

*Opinion*

PALMER, J. The plaintiff, Thomas Ventura, commenced this action against the named defendant, the town of East Haven, seeking damages for injuries he sustained when he was struck by an unregistered vehicle driven by a third party, Vladimir Trnka. The plaintiff maintained that the defendant is liable for those damages because he would not have incurred them if Jeffrey R. Strand, an East Haven police officer who had been dispatched to respond to an incident involving Trnka shortly before he was struck, had directed that Trnka's vehicle be towed in accordance with certain police department tow rules.[1] According to the plaintiff, those rules require the towing of unregistered vehicles like Trnka's. Following a trial, the jury rejected the defendant's claim of governmental immunity,[2] finding that Strand had a ministerial duty under those tow rules to have had Trnka's vehicle towed, and awarded the plaintiff $12,200,000 in damages. The trial court thereafter granted in part the defendant's motion for remittitur and reduced the verdict to $6,200,000. The defendant appealed to the Appellate Court, which reversed the judgment of the trial court on the ground that the defendant was immune from suit because its tow rules did not impose on Strand a clear ministerial duty to tow Trnka's vehicle. See *Ventura* v. *East Haven*, 170 Conn. App. 388, 414–15, 154 A.3d 1020 (2017). We granted the plaintiff's petition for certification to appeal, limited to the issue of whether the Appellate Court correctly determined that governmental immunity barred the plaintiff's action. *Ventura* v. *East Haven*, 325 Conn. 905, 156 A.3d 537 (2017). We affirm the judgment of the Appellate Court because we agree that the plaintiff's action is foreclosed by governmental immunity.

The Appellate Court's opinion sets forth the following procedural history and relevant facts, which the jury reasonably could have found. "On November 4, 2006, Strand was dispatched to investigate a '[p]ossible domestic' incident occurring inside a '[l]arge white work van in the McDonald's drive-[through]' with an '[i]rate male . . . operator.' The person who called 911 described the driver as possibly being 'on drugs' or 'drunk' and 'nodding out.' The caller further described the driver as 'punching the ceiling' and 'not normal.' After arriving at the McDonald's, Strand identified a vehicle in the drive-through lane that he believed might be the white work van described by dispatch. He pulled his cruiser 'face to face' with the white work van, and walked around the van to approach the driver from behind, as he was 'on a . . . domestic violence call.'

"While approaching the driver, Strand radioed in the license plate number, which dispatch confirmed as 'an '89 FORD cutaway cargo van, white . . . out of Townsend Ave. Val Trnka, '07 expiration.' Despite believing that the 'white work van' that dispatch described was

the vehicle in front of him, Strand was mistaken in that it was actually a 1997 white [Chevrolet] box truck. He did not ask for registration or proof of insurance, and did not check the emblems on the vehicle to ensure that it was the make and model dispatch had described. Strand then instructed Trnka, the driver, to pull into a parking spot so he could continue his investigation. Victoria Conte, another police officer, arrived on the scene and helped Strand separate and interview Trnka and his girlfriend, Kristen D'Aniello, who was a passenger in the truck. After determining that there was no probable cause for arrest because there was no physical violence between Trnka and D'Aniello during the period of time they were in the drive-through, Strand and Conte further concluded that there was no need to administer a field sobriety test to Trnka.[3] Strand asked Trnka and D'Aniello for their driver's licenses, but neither could produce one. He subsequently called dispatch to run their names through the Department of Motor Vehicles (DMV) database to check for valid driver's licenses and [the] National Crime Information Center database to check for any outstanding warrants. The dispatcher . . . was able to confirm [only] that there were no outstanding warrants for either individual, because the DMV database was malfunctioning. Because Strand could not confirm that Trnka had a valid driver's license, he decided to drive Trnka home and directed Trnka to leave his truck parked in the McDonald's parking lot and keep his keys. Conte drove D'Aniello to her residence.

"Fifty-six minutes later, Trnka retrieved his truck from the McDonald's parking lot and drove it to the intersection of Townsend Avenue and Park Lane in New Haven, less than one mile from Trnka's residence. The plaintiff, an eighteen year old high school student at that time, was entering his vehicle, which was parked on the side of the road. Trnka hit the plaintiff with his vehicle, causing him to suffer severe injuries . . . ." (Footnotes added and omitted.) *Ventura* v. *East Haven*, supra, 170 Conn. App. 391–92.

"Trnka was [later arrested and] charged with evasion of responsibility in violation of General Statutes § 14-224 and failure to drive in the proper lane in violation of General Statutes § 14-236. . . . [A]s part of the motor vehicle investigation, [it was also] determined that the license plate affixed to the truck did not match the description of the vehicle to which that plate had been assigned and that Trnka was driving without valid insurance or registration, determinations that were not made by Strand at the time he investigated the report of the domestic violence incident. Trnka was, therefore, further charged with misuse of plates in violation of General Statutes § 14-147, operating an unregistered motor vehicle in violation of General Statutes § 14-12a, and operating a motor vehicle without insurance in violation of General Statutes § 14-213b. . . .

"The plaintiff subsequently sought to recover damages for his injuries and commenced the present action against Strand[4] and the defendant, alleging that Strand negligently violated a ministerial duty imposed on him by the East Haven Police Department Tow Board Rules & Regulations[5] (tow rules) by failing to have Trnka's truck towed from the McDonald's parking lot. The plaintiff's operative complaint alleged that Strand 'failed to have Trnka's [truck] towed and impounded as required in every case involving misuse of plates, lack of insurance or registration by rules promulgated by and for the East Haven police,' and 'failed to secure Trnka's [truck] so that he could not return and operate it unlawfully in violation of due care and police procedures.' In particular, he alleged that paragraph 7 of the tow rules required that '[a]ll motor vehicle violations are to be towed to include unregistered and misuse of plates. Operators of these vehicles are not allowed to park [the] vehicle or leave [it] in private parking areas.' The complaint further alleged that the defendant was directly liable for Strand's negligence under General Statutes § 52-557n (a) (1) (A).[6] In its answer, the defendant raised several special defenses, including that of governmental immunity.

"During the trial, the plaintiff introduced into evidence a copy of the tow rules. This document, effective September 1, 1998, was prefaced by a memorandum issue by then Chief of Police Leonard I. Gallo stating that '[a]ll establishments who tow for the East Haven Police Department [department] must adhere to these Rules & Regulations.' The first paragraph of the tow rules provides that 'any company or person with towing equipment and having their business within the [t]own of East Haven may make application to the [department] to be on the [department] rotating tow list provided they conform to the following rules and regulations.'

"The defendant moved for a directed verdict after the close of the plaintiff's case-in-chief. The court reserved decision on the motion for directed verdict, as permitted under Practice Book § 16-37, and allowed the defense to proceed. In his closing argument, the [plaintiff's counsel] argued to the jury that the tow rules applied in equal force to police officers and to businesses conducting towing operations at the direction of the police. [Counsel] further argued that Strand was negligent in not towing and impounding, or otherwise securing, Trnka's truck on the basis of the motor vehicle violations that he knew existed at the time of his investigation of the possible domestic violence incident in the McDonald's parking lot, and, because of that knowledge, he did not have the discretion to decline to tow the truck. The defendant argued that Strand did not know of the motor vehicle violations existing at the time of the stop and that, even if he was aware of such

violations, the decision to tow was discretionary, and, thus, the defendant was protected by governmental immunity.

"Regarding the defendant's special defense of governmental immunity, the court instructed the jury that '[i]n this case, the parties agree and the court instructs you that . . . Strand was a municipal employee engaged in a governmental function at the time of the plaintiff's alleged injuries. The parties disagree, however, as to whether . . . Strand was free to exercise discretion when acting or failing to act as he did.

" 'The question for you . . . [to decide] is whether . . . Strand was performing a discretionary or ministerial act when the plaintiff was allegedly injured by his conduct. As I stated earlier, the burden is on the defendant, who desires the benefit of governmental immunity, to persuade you by a . . . fair preponderance of the evidence, that . . . Strand's actions or inactions were the result of the exercise of discretion rather than the failure to comport with a mandatory course of conduct.

" 'If you find that the defendant has failed to meet the burden of establishing this special defense, then no immunity would protect the defendant from liability if you determine that . . . Strand was negligent, and that negligence proximately caused the injuries claimed by the plaintiff, you would therefore find in favor of the plaintiff. If, however, you find that the defendant has satisfied this burden, you would then render a verdict for the defendant.'

"The jury returned a verdict for the plaintiff and found damages in the amount of $12,200,000, finding, by way of its response to a jury interrogatory, that Strand negligently violated a ministerial duty to tow Trnka's truck.[7] Following trial, on January 3, 2014, the defendant filed a renewed motion for a directed verdict and a motion to set aside the verdict. It also filed a motion seeking a remittitur in the amount of $11,000,000 and a collateral source reduction. In a memorandum of decision dated July 10, 2014, the court denied the defendant's renewed motion for a directed verdict and its motion to set aside the verdict, but granted the motion for remittitur in the amount of $6,000,000, thereby reducing the verdict to $6,200,000.

"In denying the defendant's motions to direct or set aside the verdict, the court found, on the issue of governmental immunity, that '[t]here was sufficient evidence adduced during the plaintiff's case-in-chief on the issue of whether Strand's actions were ministerial or discretionary. . . . The plain language of [paragraph 7 of the tow rules] falls within the definition of ministerial. There is no exercise of judgment in the language of the regulation.' Later, while rendering judgment for the plaintiff on March 13, 2015, the court granted the

defendant's request for a collateral source reduction, and reduced the judgment to $5,977,553.39 before interest." (Footnotes added and omitted.) Id., 394–98.

The defendant appealed to the Appellate Court, claiming, inter alia, that the trial court improperly had denied its motion for a directed verdict on the basis of governmental immunity. Id., 399. Specifically, the defendant argued that the trial court was incorrect in concluding that paragraph 7 of the tow rules imposed a clear ministerial duty on East Haven police officers to tow the vehicles of all drivers who have violated motor vehicle laws because that paragraph, along with the other twenty paragraphs of those rules, is directed at and regulates towing companies doing business with the department and does not apply to police officers.[8] Id., 407. The Appellate Court agreed with the defendant and, in so doing, rejected the plaintiff's contention that whether the tow rules imposed a ministerial duty on Strand presented a question of fact for the jury. Id., 402. The court explained that when, as in the present case, the question of whether an act is ministerial or discretionary turns on the interpretation of a statute, municipal ordinance or other written directive, that issue gives rise to a question of law for the court. Id., 403. The court further explained that "a plaintiff seeking to avoid the immunity typically afforded to police officers must demonstrate that by statute or other rule of law the official's duty is *clearly* ministerial rather than discretionary . . . ." (Emphasis in original; internal quotation marks omitted.) Id., 406–407.

Applying these principles to the present facts, the Appellate Court concluded that the tow rules, by their express and unambiguous terms, did not purport to impose on East Haven police officers a ministerial duty to tow the vehicles of all drivers who have violated the state's motor vehicle laws; they were promulgated, rather, solely for the purpose of clarifying the responsibilities of towing companies wishing to do business with the department. Id., 407–409, 413–14. This was evidenced, the court explained, not only by the first paragraph of the tow rules and prefatory memorandum that accompanied them, but also by the signature line at the end of the tow rules, which directed the " '[a]pplicant' " tow truck company to attest that it had " 'read and under[stood] each of the above and will strictly adhere to these [r]ules & [r]egulations.' " Id., 409.

In reaching its conclusion, the Appellate Court rejected the plaintiff's contention that paragraph 7 of the tow rules, which provides that "[a]ll motor vehicle violations are to be towed to include unregistered and misuse of plates" and that "[o]perators of these vehicles are not allowed to park vehicle or leave in private parking areas," imposed a clear ministerial duty on Strand to tow Trnka's vehicle. Id., 407. The court reasoned that paragraph 7 must be read in conjunction with paragraph

6, which expressly states that "[o]fficer discretion will prevail regarding vehicles that are to be towed. If vehicle is not a hazard or obstructing traffic the officer may contact [the American Automobile Association (AAA)], etc. However, if vehicle is a hazard or obstructing the tow log is to be used." Id., 408. The court explained that, "[w]hen read together, paragraphs 6 and 7 are reconciled and make sense only with the understanding that the tow rules regulate tow truck operators and not police officers. Paragraph 6 informs tow truck operators that it is ultimately within police discretion as to whether a motor vehicle will be towed, and who may tow it. Paragraph 7 then clarifies that, once an officer has exercised his discretion to order a motor vehicle towed, the tow company must follow the officer's direction to tow the vehicle. Vehicle owners cannot negotiate with tow truck companies to allow the vehicle to remain in a 'private parking area.' " Id., 408–409. The court further explained, moreover, that interpreting paragraph 7 to impose on East Haven officers a ministerial duty to tow "[a]ll motor vehicle violations" would render paragraph 6 superfluous, in violation of the cardinal principle that such provisions are to be interpreted to avoid such a construction. Id., 411.

The Appellate Court further observed that the plaintiff's interpretation of paragraph 7 of the tow rules was not only incompatible with the unfettered officer discretion in regard to towing described in paragraph 6, but would lead to a bizarre and unworkable result, namely, that East Haven police officers would be required "to tow a motor vehicle in every situation in which an officer determined that a violation of the motor vehicle laws had occurred," including "every time a driver is stopped for rolling through a stop sign or for failing to obey a yield sign." (Footnote omitted.) Id., 410. The construction advanced by the plaintiff would yield such a result, the court explained, because paragraph 7 expressly states that "[a]ll motor vehicle violations are to be towed," not just violations involving the failure to register a vehicle or the misuse of plates. Id.

Finally, the Appellate Court addressed the plaintiff's claim that the jury reasonably could have relied on the testimony of two East Haven officers, Sergeant Paul Liquori, who drafted the tow rules, and Lieutenant David Emerman, the officer designated by the defendant as the person most knowledgeable about the department's rules and procedures, to find that the tow rules imposed a ministerial duty on police officers to tow particular vehicles. Id., 402 n.16. The court also rejected this contention, explaining that both men had testified unequivocally that the decision whether to tow a vehicle is always within the officer's discretion, and that the plaintiff, in arguing to the contrary, had parsed the officers' testimony in such a manner as to ignore this crucial testimony. Id. The court further observed that the plaintiff's own expert witness, Peter Fearon,

"agreed that the tow rules were clearly directed toward towing companies," and that "[n]one of the plaintiff's witnesses testified that the tow rules imposed a ministerial obligation on East Haven police officers to tow." (Internal quotation marks omitted.) Id.

On appeal to this court, following our grant of certification, the plaintiff claims that, notwithstanding the contrary determination of the Appellate Court, the issue of whether the tow rules imposed on Strand a ministerial duty to tow Trnka's vehicle was a question of fact for the jury, not one of law for the court. The plaintiff further contends that the Appellate Court incorrectly construed the tow rules in concluding that Strand had no ministerial duty under those rules to tow Trnka's vehicle. Finally, the plaintiff argues that the Appellate Court incorrectly determined that the jury reasonably could not have relied on Emerman's testimony in finding that department policy required Strand to tow Trnka's vehicle. We disagree with each of these contentions.

We begin our review of the plaintiff's claims by setting forth the principles that guide our analysis, considering first the law governing motions for a directed verdict. "The standards for appellate review of a directed verdict are [clear]. Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 497–98, 853 A.2d 460 (2004). In addition, "[a] verdict may be directed [when] the decisive question is one of law . . . ." (Internal quotation marks omitted.) *Ruff* v. *Yale-New Haven Hospital, Inc.*, 172 Conn. App. 699, 716, 161 A.3d 552 (2017).

The law pertaining to municipal immunity is similarly well settled. "[Section] 52-557n abandons the common-law principle of municipal sovereign immunity and establishes the circumstances in which a municipality may be liable for damages. . . . One such circumstance is a negligent act or omission of a municipal officer acting within the scope of his or her employment or official duties. . . . [Section] 52-557n (a) (2) (B), however, explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions [that] require the exercise of judgment or discretion as an official function of the

authority expressly or impliedly granted by law.'"[9] (Footnote omitted; internal quotation marks omitted.) *Brooks* v. *Powers*, 328 Conn. 256, 264–65, 178 A.3d 366 (2018).

"Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . [D]iscretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officials and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Coley* v. *Hartford*, 312 Conn. 150, 161, 95 A.3d 480 (2014); see also *Wadsworth* v. *Middletown*, 94 Conn. 435, 440, 109 A. 246 (1920) ("[t]imidity and doubt would govern [public officials'] performance of public duty if they acted in the consciousness that personal liability might follow, no matter how closely they followed their best discretion"). "In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Coley* v. *Hartford*, supra, 162.

"[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 180, 544 A.2d 1185 (1988). Indeed, this court has long recognized that it is not in the public's interest to "[allow] a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a policeman's discretionary professional duty. Such discretion is no discretion at all." *Shore* v. *Stonington*, 187 Conn. 147, 157, 444 A.2d 1379 (1982); see also *Coley* v. *Hartford*, supra, 312 Conn. 165 (our case law "underscores the considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis"). Thus, as a general rule, "[p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer." (Internal quotation marks omitted.) *Smart* v. *Corbitt*, 126 Conn. App. 788, 800, 14 A.3d 368, cert. denied, 301 Conn. 907, 19 A.3d 177 (2011).

In accordance with these principles, our courts consistently have held "that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation,

rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. See *Violano* v. *Fernandez*, 280 Conn. 310, 323, 907 A.2d 1188 (2006); *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989); *DiMiceli* v. *Cheshire*, [162 Conn. App. 216, 224–25, 131 A.3d 771 (2016)]; *Grignano* v. *Milford*, 106 Conn. App. 648, 659–60, 943 A.2d 507 (2008)." *Northrup* v. *Witkowski*, 175 Conn. App. 223, 235, 167 A.3d 443, cert. granted on other grounds, 327 Conn. 971, 173 A.3d 392 (2017); see also *Bonington* v. *Westport*, 297 Conn. 297, 308, 999 A.2d 700 (2010) (cause of action lies against municipality for allegedly negligent performance of municipal official "[i]f by statute or other rule of law the official's duty is clearly ministerial rather than discretionary" [internal quotation marks omitted]). Because the construction of any such provision, including a municipal rule or regulation, presents a question of law for the court; see, e.g., *Kiewlen* v. *Meriden*, 317 Conn. 139, 149, 115 A.3d 1095 (2015) ("[a]s with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary" [internal quotation marks omitted]); *Honulik* v. *Greenwich*, 293 Conn. 698, 710, 980 A.2d 880 (2009) ("[p]rinciples of statutory construction govern our interpretation of . . . [municipal rules and regulations]"); *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission*, 267 Conn. 192, 197, 837 A.2d 748 (2004) ("plenary review . . . applies to questions of law relating to the interpretation of [municipal] regulations"); whether the provision creates a ministerial duty gives rise to a legal issue subject to plenary review on appeal. Thus, as we repeatedly have stated, "[t]he ultimate determination of whether . . . immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [in which case] resolution of those factual issues is properly left to the jury." (Internal quotation marks omitted.) *Strycharz* v. *Cady*, 323 Conn. 548, 574, 148 A.3d 1011 (2016); accord *Martinez* v. *New Haven*, 328 Conn. 1, 8, 176 A.3d 531 (2018); *Haynes* v. *Middletown*, 314 Conn. 303, 313, 101 A.3d 249 (2014); *Bonington* v. *Westport*, supra, 306; *Hopkins* v. *O'Connor*, 282 Conn. 821, 847, 925 A.2d 1030 (2007); *Ham* v. *Greene*, 248 Conn. 508, 525–26, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S. Ct. 326, 145 L. Ed. 2d 254 (1999). With these principles in mind, we turn to the merits of the plaintiff's claims.

We begin with the plaintiff's assertion that the Appellate Court incorrectly determined that the issue of whether the tow rules imposed on Strand a ministerial duty to tow Trnka's vehicle was a question of law for the court rather than one of fact for the jury. The plaintiff maintains that, if allowed to stand, the Appellate Court decision "would turn a traditional factual determination

into a legal determination in every instance." In support of this contention, the plaintiff cites the following language that has appeared in several of this court's governmental immunity cases: "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases [in which] it is apparent from the complaint . . . [that the determination of whether an act or omission is discretionary in nature] and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, [when] it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus . . . necessarily were discretionary in nature, summary judgment is proper." (Internal quotation marks omitted.) *Coley* v. *Hartford*, supra, 312 Conn. 162, quoting *Bonington* v. *Westport*, supra, 297 Conn. 307–308. On the basis of this language, the plaintiff argues that it was improper for the Appellate Court to resolve the governmental immunity question as a matter of law because it could not have been apparent from his complaint that Strand's acts or omissions necessarily involved the exercise of judgment. The plaintiff maintains that the only proper course was the one taken by the trial court, namely, to instruct the jury to decide whether the act was discretionary or ministerial. According to the plaintiff, "[i]f every single written municipal rule is to be subjected to a statutory interpretation analysis conducted solely by the court, it would render meaningless the longstanding precedent that the ministerial-discretionary determination is normally a question of fact for the fact finder." (Internal quotation marks omitted.)

The defendant responds that whether a municipal rule or regulation imposes a ministerial duty on a municipal official is a question of law for the court. Likewise, the defendant maintains, whether an act or omission is ministerial or discretionary is also a question of law for resolution by the court. The defendant further asserts that, to the extent that the language relied on by the plaintiff suggests otherwise, we should acknowledge that it is an incorrect statement of the law. We agree with each of the defendant's contentions.

As we discussed previously, this court, on numerous occasions, has stated unequivocally that the determination of whether a governmental or ministerial duty exists gives rise to a question of law for resolution by the court. See, e.g., *Strycharz* v. *Cady*, supra, 323 Conn. 564 n.21 ("[t]he issue of governmental immunity is . . . a question of the existence of a duty of care, and this court has approved the practice of deciding the issue of governmental immunity as a matter of law" [internal quotation marks omitted]); *Doe* v. *Petersen*, 279 Conn. 607, 621, 903 A.2d 191 (2006) ("the issue of governmen-

tal immunity is . . . a question of the existence of a duty of care, which is a question of law [and] [*o*]*nly* if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand" [emphasis in original; internal quotation marks omitted]). Nevertheless, on a number of occasions, we also have stated that whether the acts or omissions of a municipal official are ministerial or discretionary normally presents a question of fact for the fact finder. See, e.g., *Strycharz* v. *Cady*, supra, 565; *Bonington* v. *Westport*, supra, 297 Conn. 307–308; *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 49, 881 A.2d 194 (2005).[10] As the defendant aptly asserts, however, it is apparent that this statement, which originated in *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628, 749 A.2d 630 (2000), is based on a misreading of *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 171. More specifically, in *Lombard*, this court cited *Gordon* for the proposition that whether an act or omission is ministerial or discretionary is normally a question of fact for the fact finder. See *Lombard* v. *Edward J. Peters, Jr., P.C.*, supra, 628. The passage in *Gordon* that *Lombard* cites, however, merely sets forth the plaintiff's *claim* in *Gordon*, which this court ultimately rejected. *Gordon* v. *Bridgeport Housing Authority*, supra, 170–71.

In *Gordon*, the plaintiff, Virginia N. Gordon, argued, inter alia, "that there is a threshold inquiry in the area of municipal liability—deciding if the official acts or omissions are ministerial or discretionary—and because that is a question for the trier of fact, it is inappropriate to decide the issue on a motion to strike." Id., 165. In support of this contention, Gordon relied on a number of cases, including *Gauvin* v. *New Haven*, 187 Conn. 180, 186–87, 445 A.2d 1 (1982), and *Tango* v. *New Haven*, 173 Conn. 203, 204, 377 A.2d 284 (1977), which the plaintiff in the present case also cites. See *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 165. We expressly rejected Gordon's claim, however, explaining that the cited cases were not controlling because, in all of them, the duty of the municipality was "unquestioned under the facts pleaded . . . . See, e.g., *Gauvin* v. *New Haven*, supra [186–87] (city had a duty to use due care in operating city park); *Tango* v. *New Haven*, supra, 205 (city had a duty to use due care in permitting the public to use city property for sled riding)." *Gordon* v. *Bridgeport Housing Authority*, supra, 180–81. In other words, in all of the cases on which Gordon relied, we were not required to determine whether the existence of a ministerial duty presented a question of law or fact. Squarely presented with that issue, however, we disagreed with Gordon's contention that it gave rise to a question of fact. In so doing, we reaffirmed our long-standing "practice of deciding the issue of governmental immunity as a matter of law"; id., 170; and, quoting from *Shore* v. *Stonington*, supra,

187 Conn. 152, we explained: "The plaintiff [in *Shore*] argue[d] that summary judgment is inappropriate in this area because there existed a genuine dispute as to the material facts relating to the extent of [a police officer's] duty to the plaintiff's decedent. The law does not recognize a duty in the air. . . . To sustain a cause of action, the court must determine whether the [municipal] defendant owed a duty to the plaintiff's decedent . . . and the applicable standard of care. . . . The existence of a duty is a question of law. . . . Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Citations omitted; internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, supra, 171. We then concluded in *Gordon* as follows: "It is the existence of a duty that is the dispositive factor concerning the motion to strike in this case. To survive a motion to strike, the court must determine that the [defendant] owed a duty to the [plaintiff]. The existence of this duty is a matter for the court to decide, not a jury. . . . The plaintiff's claim that the trial court was precluded from deciding on a motion to strike whether the [defendant] owed a duty to the [plaintiff] is unavailing." (Citation omitted.) Id., 171–72.

We therefore made it perfectly clear in *Gordon* that the issue of whether a statute, regulation or other provision of law creates a ministerial duty ordinarily presents a question of law to be decided by the court.[11] Insofar as our language in *Lombard* and in several subsequent cases indicates otherwise, we expressly disavow that language.[12] Thus, as the Appellate Court concluded, whether the tow rules at issue required that Strand have Trnka's truck towed, thereby creating a ministerial duty on Stand's part, is a question of law for the court, subject to plenary review on appeal. *Ventura* v. *East Haven*, supra, 170 Conn. App. 404. We now address that issue.

Having considered the parties' arguments, we agree fully with the Appellate Court's thorough and persuasive analysis; see id., 407–14; and conclusion, on the basis of that analysis, that the tow rules simply do not apply to East Haven police officers but were written solely to regulate tow truck operators doing business with the department. Id., 414–15. As the Appellate Court explained, this conclusion is compelled not only by the plain language of the tow rules themselves; see footnote 5 of this opinion; all of which are directed at tow truck companies or their operators; *Ventura* v. *East Haven*, supra, 170 Conn. App. 409; but also by the memorandum that accompanied the tow rules, which states that "[a]ll establishments who tow for the [department] must adhere to these [r]ules & [r]egulations" and must "read, sign and provide the information necessary in order to complete the process." The Appellate Court's interpretation of the tow rules as applying only to tow truck companies and operators also avoids the absurd and unworkable result that would obtain from the interpre-

tation advanced by the plaintiff, which, as the Appellate Court explained, would require East Haven police officers to impound the vehicle of every driver who fails to use a turn signal or drives with a broken tail light or in excess of the speed limit. *Ventura* v. *East Haven*, supra, 410.

Furthermore, although we believe that the tow rules are unambiguous as applied to the present facts, thereby rendering extratextual evidence unnecessary, even if they were not so clear, the Appellate Court's interpretation of those rules is supported by the testimony of every witness with knowledge of the rules, including the testimony of the plaintiff's expert, Fearon, who "conceded during cross-examination . . . that the tow rules were 'directed toward towing companies' and 'not police officers,' and that '[o]ne reason for [these] rule[s] might be that . . . the chief of police doesn't want any dispute out on the road between the tow truck companies and the police officers.' " *Ventura* v. *East Haven*, supra, 170 Conn. App. 414. The tow rules' drafter, Liquori, confirmed Fearon's suspicion regarding the rules' origin, explaining that, prior to their implementation, tow truck operators "were arriving simultaneously at calls, fighting, and causing damage to towed vehicles . . . ." Id., 414 n.29. According to Liquori, the tow rules were intended "to let the tow companies know what we expected of them if they wanted to work for the town or work with the police department . . . ."[13] (Internal quotation marks omitted.) Id., 414.

Finally, the plaintiff argues that the jury reasonably could have found, solely on the basis of Emerman's testimony, that Strand had a ministerial duty to tow Trnka's vehicle, independent of any duty allegedly imposed on him by the tow rules. As the Appellate Court explained, however, Emerman testified unequivocally *that there was no rule*, written or unwritten, dictating the manner in which an East Haven police officer must handle an unregistered vehicle or one with misused plates. Emerman also testified that an officer's decision to tow a vehicle is *always* within the officer's discretion. Indeed, the plaintiff's own expert testified that he was aware of no Connecticut law requiring an officer to tow an unregistered vehicle or a vehicle determined to have misused plates.[14]

The plaintiff contends, nonetheless, that the jury reasonably could have rejected Emerman's testimony regarding the discretionary nature of the decision to tow as "self-serving" and concluded that a ministerial duty existed on the basis of Emerman's testimony that unregistered vehicles are routinely towed in East Haven, that, based on his training and experience, he did not let anybody drive off in an unregistered vehicle following a traffic stop, and that the " 'general rule' " among police officers is " 'to tow and impound' " such vehicles, albeit with certain exceptions. There are, no

doubt, any number of guidelines and practices that police officers adhere to when responding to the myriad situations they confront on a daily basis. The mere fact that an officer, either by training or experience, ordinarily responds to a situation in a particular manner does not transform his or her response into a ministerial duty. If it did, governmental immunity would virtually cease to exist.[15] Thus, although Emerman's testimony was certainly evidence of the manner in which he and other East Haven police officers exercise their discretion with respect to unregistered vehicles, it fell far short of establishing the existence of a ministerial rule dictating the manner in which such vehicles are to be handled in every instance. See, e.g., *Strycharz* v. *Cady*, supra, 323 Conn. 566–67 (testimony that did not identify specific directive but merely established manner in which individual official performed his official duties was insufficient to establish existence of ministerial duty); *Northrup* v. *Witkowski*, supra, 175 Conn. App. 236 n.5 (explaining that "vague" testimony that "does not come close to an admission that the town had a nondiscretionary duty" is insufficient to establish ministerial duty in absence of written directive). Furthermore, although the plaintiff is correct that the jury was free to disbelieve all or any portion of Emerman's testimony, it was not permitted to "draw a contrary inference on the basis of that disbelief." *Paige* v. *Saint Andrew's Roman Catholic Church Corp.*, 250 Conn. 14, 18, 734 A.2d 85 (1999); see also *Novak* v. *Anderson*, 178 Conn. 506, 508, 423 A.2d 147 (1979) ("[w]hile it is true that it is within the province of the jury to accept or reject a defendant's testimony, a jury in rejecting such testimony cannot conclude that the opposite is true"). This principle has particular force when, as in the present case, the contrary inference to be drawn concerns the imposition of a ministerial duty on a municipal official.

For all the foregoing reasons, the plaintiff cannot prevail on his claim that the Appellate Court incorrectly concluded that the defendant was immune from suit because Strand had no ministerial duty to tow Trnka's vehicle from the McDonald's parking lot. Accordingly, the Appellate Court properly reversed the judgment of the trial court and directed that court, on remand, to render judgment for the defendant.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* This case was originally argued before a panel of this court consisting of Justices Palmer, McDonald, Robinson, Kahn and Espinosa. Thereafter, Justice Espinosa retired from this court and did not participate in the consideration of this decision. Chief Judge DiPentima was added to the panel, and she has read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

The listing of justices reflects their seniority status on this court as of the date of oral argument.

[1] Strand originally was named as a defendant in this case, but the plaintiff withdrew his claims against Strand prior to trial. All references to the defen-

dant are to the town of East Haven.

[2] As we discuss more fully hereinafter, governmental immunity shields municipalities and their employees from liability for negligence in circumstances in which the negligent acts or omissions are discretionary rather than ministerial in nature. See, e.g., *Haynes* v. *Middletown*, 314 Conn. 303, 312, 101 A.3d 249 (2014).

[3] In his incident report, Strand did state that Trnka was "highly agitated" and "emotional" following what was described as a "verbal argument" between "two people sitting inside a vehicle . . . ."

[4] See footnote 1 of this opinion.

[5] The East Haven Police Department Tow Board Rules & Regulations provide in relevant part: "[A]ny company or person with towing equipment and having their business within the [t]own of East Haven may make application to the East Haven Police Department to be on the East Haven Police Department rotating tow list provided they conform to the following rules and regulations.

"1. That all towing companies shall provide [twenty-four] hour a day and [seven] day a week towing service to the East Haven Police Department.

"2. That all towing companies shall provide the East Haven Police Department with both day and night telephone numbers.

"3. That all tow companies give priority to calls received from the East Haven Police Department and respond to the scene within [twenty] minutes.

"4. That all tow companies will tow police vehicles on a rotation basis with no charge to the [t]own of East Haven. . . .

"5. If a tow company fails to answer [a] request, does not show or is unavailable, credit that company with the tow and proceed to the next available tow company.

"6. Officer discretion will prevail regarding vehicles that are to be towed. If vehicle is not a hazard or obstructing traffic the officer may contact [the American Automobile Association], etc. However, if vehicle is a hazard or obstructing the tow log is to be used.

"7. All motor vehicle violations are to be towed to include unregistered and misuse of plates. Operators of these vehicles are not allowed to park vehicle or leave in private parking areas.

"8. Tow companies are only to release towed vehicles upon permission from the East Haven Police Department.

"9. That all tow companies provide the East Haven Police Department with a list of their equipment and capabilities. This includes heavy duty, medium duty, light duty, flatbed, motorcycle slings and storage facilities.

"10. That all tow companies agree that all wreckers used will be inspected by the East Haven Police Department at any time and must at all times be fully equipped as per the requirements of the Motor Vehicle Department and [s]tate [s]tatute.

"11. Tow companies may also be removed from the list if they are charging in excess of the state authorized rate for towing or if the company is found to be in violation of [s]tate [s]tatute or East Haven [Police Department Tow Board] Rules & Regulations.

"12. The tow companies agree that local residents will only be charged a [$70] fee for towing. This rate applies only if the vehicle stays in the confines of the [t]own of East Haven.

"13. That the tow companies agree that they will clean all debris from roadway at all accident scenes or situations where they are called upon to tow a vehicle. This task must be performed to the satisfaction of the investigating officer. Failure to do so may result in the suspension of the tow company from the rotating list or other appropriate discipline may occur as prescribed by the [c]hief of [p]olice.

"14. That the tow companies agree that they will provide in town transportation for operator and occupants when possible, with respect to the tow truck occupant capacity.

"15. That all tow companies agree that during any police investigation or emergency situation as determined by the police, the East Haven Police Department reserves the right at any time to call a tow company without regard to the tow rotation list.

"16. That the tow company shall be responsible for the preservation, condition, and safety of all vehicles towed and its contents therein.

"17. That the tow company shall be responsible to respond to any part of town when requested regardless of the distance within the confines of the [t]own of East Haven.

"18. That any tow company that refuses three service calls offered to them by the East Haven Police Department in a [thirty] day monthly period,

the company will be notified in writing and suspended from the tow list for the remainder of the month. If this occurs two months consecutively in any calendar year, the company will be removed from the list and the [c]hief of [p]olice notified. The company will be notified in writing of the removal and it will be the company's responsibility to notify the [c]hief of [p]olice in writing that the company wishes to be reinstated on the rotating list. All future offenses may result in the company being permanently removed from the tow list. The above does not preclude the [c]hief of [p]olice from removing a company for just cause.

"19. If a customer makes a reasonable and responsible request for towing, said company will be credited with a tow on the East Haven [p]olice [l]og.

"20. That all companies agree not to [subcontract] any tow work if they are unavailable to handle an assigned job. The East Haven Police Department will utilize only towing companies that have made application and are on the tow list.

"21. The East Haven [c]hief of [p]olice reserves the right to amend [these] [r]ules & [r]egulations at any time. If [these] [r]ules & [r]egulations are amended all participating tow companies will be notified in writing. . . ."

[6] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[7] "On the issue of governmental immunity, the court posed the following interrogatory to the jury: 'Did the defendant prove by preponderance of the evidence that the decision on whether to tow and/or impound [Trnka's] vehicle was within the discretion of . . . Officer Strand?' The jury answered 'no' to this interrogatory." *Ventura* v. *East Haven*, supra, 170 Conn. App. 397 n.11.

[8] On appeal to the Appellate Court, the defendant also challenged several of the trial court's evidentiary rulings and claimed, as well, that the trial court improperly had failed to direct or set aside the verdict on the ground that there was insufficient evidence of actual and proximate causation. *Ventura* v. *East Haven*, supra, 170 Conn. App. 390. The Appellate Court did not reach these additional claims in light of its determination that the plaintiff's action was barred by governmental immunity. Id., 390 n.2.

[9] Although we have recognized several exceptions to discretionary act immunity; see, e.g., *Violano* v. *Fernandez*, 280 Conn. 310, 319–20, 907 A.2d 1188 (2006); none is implicated in this case.

[10] In fact, we have used this language in several of the cases in which we also have stated that the determination of whether the acts of a municipal official are ministerial or discretionary presents a question of law for the court. See, e.g., *Strycharz* v. *Cady*, supra, 323 Conn. 565; *Coley* v. *Hartford*, supra, 312 Conn. 162; *Bonington* v. *Westport*, supra, 297 Conn. 307–308.

[11] As we observed previously, although the ultimate determination of whether governmental immunity applies is typically a question of law for the court, there may well be disputed factual issues material to the applicability of the defense, the resolution of which are properly left to the trier of fact. See, e.g., *Strycharz* v. *Cady*, supra, 323 Conn. 572–73 (remanding case to trial court for finding on whether assistant principals had discharged ministerial duty to create and distribute bus monitor roster to school staff); *Haynes* v. *Middletown*, supra, 314 Conn. 331 (remanding case to trial court for finding on whether plaintiff was identifiable person subject to imminent harm for purposes of applying exception to governmental immunity); see also *Mulligan* v. *Rioux*, 229 Conn. 716, 735–36 and n.22, 643 A.2d 1226 (1994) (noting that disputed factual issues material to applicability of police officers' qualified immunity defense, such as what officers knew or reasonably should have known with respect to certain matters, presented factual questions for jury). In the present case, the material facts are either not in dispute or were found by the jury. Consequently, the only issue is whether, in light of those facts, Strand had a ministerial duty to tow Trnka's vehicle, an issue that presents a pure question of law for the court.

[12] It bears noting that, in those cases in which we have incorrectly stated that the question of whether official acts or omissions are ministerial generally is one of fact for the fact finder, we nevertheless decided the issue as

a matter of law. See *Strycharz* v. *Cady*, supra, 323 Conn. 567–69 (deciding as matter of law that school officials had ministerial duty to assign school staff to bus duty but not to ensure that assigned staff members actually reported to and adequately discharged that duty pursuant to student safety program); *Coley* v. *Hartford*, supra, 312 Conn. 152–53 (deciding as matter of law that state statute and police department policy did not impose ministerial duty on police officer to remain at scene of domestic violence incident); *Bonington* v. *Westport*, supra, 297 Conn. 310–12 (deciding as matter of law that municipal zoning regulations did not impose ministerial duty on planning and zoning department employees to inspect property); *Martel* v. *Metropolitan District Commission*, supra, 275 Conn. 50–51 (deciding as matter of law that defendant's decision whether to supervise, inspect, maintain, close or barricade trails was discretionary rather than ministerial); *Lombard* v. *Edward J. Peters, Jr., P.C.*, supra, 252 Conn. 630 (deciding as matter of law that foreclosure statute imposed ministerial duty on judicially appointed foreclosure committee to properly identify property included in foreclosure sale).

[13] We note that the plaintiff also argues that the tow rules must apply equally to East Haven police officers because otherwise the officers would have no way of knowing about their "various powers" under the rules, such as the power "to oversee tow truck compliance with motor vehicle laws," and to enforce paragraph 13 of the rules, which requires "tow companies [to] agree that they will clean all debris from [the] roadway at all accident scenes . . . to the satisfaction of the investigating officer." The plaintiff further asserts that the tow rules must be binding on East Haven police officers merely because they "were kept in the office of the police commissioner, alongside all the other rules, policies and directives" of the department, were "[f]ormally named the 'East Haven Police Department Tow Board Rules & Regulations,' " and bore the name of the former police chief, Leonard I. Gallo, on every page. The plaintiff does not explain, however, why the rules would have to be binding on an officer to ensure his or her familiarity with them, or why the location where the rules are kept or the fact that they are stamped with the former police chief's name have any bearing on whether they impose a ministerial duty on East Haven police officers to tow all vehicles that violate the state's motor vehicle laws. Indeed, under the plaintiff's reasoning, every written policy or rule of the department would have to be deemed to impose a ministerial duty on the officers to whom they apply, a proposition for which the plaintiff offers no legal or factual support.

[14] The plaintiff cites *Strycharz* v. *Cady*, supra, 323 Conn. 566, and *Wisniewski* v. *Darien*, 135 Conn. App. 364, 373, 42 A.3d 436 (2012), for the proposition that, in the absence of an explicit written directive, the testimony of a municipal official may be sufficient to establish the existence of a ministerial duty. *Strycharz* and *Wisniewski* bear no resemblance to the present case, however, because, in both cases, the testimony relied on to establish the ministerial duty did so unequivocally and was elicited directly from the municipal official alleged to have breached that duty, or from that person's direct supervisor. See *Strycharz* v. *Cady*, supra, 566 ("the deposition testimony of [the superintendent of schools], who testified that [the school principal] had a duty to assign school staff members to different posts, including the bus port, and that he lacked the discretion not to do so . . . provided a sufficient basis to conclude that school administrators had the ministerial duty to assign staff members to monitor students throughout the school" [citations omitted]); *Wisniewski* v. *Darien*, supra, 376–77 ("[i]n this case . . . the plaintiffs provided evidence through [the tree warden's] own testimony that he had a nondiscretionary duty to inspect the trees on the town's right-of-way in front of the property"). No testimony was elicited by the plaintiff in this case that was even remotely comparable to the testimony elicited by the plaintiffs in *Strycharz* and *Wisniewski* concerning the existence of an unwritten municipal rule or policy.

[15] We note that, although police officers are trained to follow specific procedures when investigating a suspected case of driving while under the influence; see *State* v. *Morelli*, 293 Conn. 147, 156–57, 976 A.2d 678 (2009) (officer followed "required procedure" during investigation of suspected intoxicated driver); this court previously has held that a police officer owes no ministerial duty to the public to enforce the state's DUI laws. See *Shore* v. *Stonington*, supra, 187 Conn. 150–51, 154, 157 (because police officer owed no specific duty to decedent to enforce state's motor vehicle laws, no action in negligence could lie against police officer for death of person whose car was struck by intoxicated driver shortly after officer had stopped

driver but let him drive away despite driver's obvious signs of intoxication). Accordingly, if Strand had stopped Trnka for driving erratically but had let him go despite obvious signs of intoxication, and Trnka had subsequently struck the plaintiff with his vehicle, any action brought by the plaintiff against the defendant likely would have been barred by governmental immunity. It would seem incongruous to construe the tow rules in such a manner that the defendant would be liable for Strand's failure to tow Trnka's unregistered vehicle but immune from liability for injuries resulting from Strand's failure to enforce the state's DUI laws. Suffice it to say that we will not lightly impute such an intent to the defendant.

------