******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SCARLETT LEWIS, ADMINISTRATRIX (ESTATE OF JESSE LEWIS), ET AL. *v.* TOWN OF NEWTOWN ET AL.
## (AC 41697)

Lavine, Elgo and Bishop, Js.

*Syllabus*

The plaintiffs, the administrators of the estates of two victims of the mass shooting at Sandy Hook Elementary School in 2012, sought to recover damages from the defendants, the town of Newtown and its board of education, pursuant to statute (§ 52-557n [a] [1]), for alleged acts of negligence that the plaintiffs claimed were substantial factors in contributing to the deaths of their decedents. The plaintiffs alleged, inter alia, that the defendants had instituted school safety policies and procedures that left no discretion to teachers and other employees, and were to be followed as mandated by the defendants. The plaintiffs claimed that a school lockdown and evacuation plan was not implemented on the day of the shooting, and that the defendants had created a ministerial duty that required their employees, agents and members to take whatever precautions were necessary and enumerated in the school safety policies and procedures to protect the plaintiffs' decedents on the day of the shooting. The plaintiffs further asserted that the defendants left the school's faculty and staff in a position in which they could not adhere to or failed to adhere to the mandatory school security guidelines. The defendants filed a motion for summary judgment in which they claimed, inter alia, that they were entitled to governmental immunity pursuant to § 52-557n (a) (2) and that there was no genuine issue of material fact as to their alleged negligence. The trial court granted the motion for summary judgment on the ground of governmental immunity, determining that the plaintiffs' complaint made no specific allegations against any of the faculty or staff in the school at the time of the shooting, and that the school security guidelines imposed discretionary responsibilities, rather than a ministerial duty, on the defendants and faculty and staff. The court also determined that the defendants' allegedly negligent acts and omissions were discretionary. Further, the court concluded that even if the school's faculty and staff had a discretionary duty to implement the school security guidelines and that the shooter had created an imminent risk to those in the school, no reasonable fact finder could conclude that the faculty and staff caused the catastrophic consequences that befell those in the school. On appeal to this court, the plaintiffs claimed, inter alia, that the trial court improperly concluded that their complaint contained only allegations of negligence that were directed at the defendants for actions that occurred before the day of the shooting. The plaintiffs further claimed that the court improperly determined that the defendants' implementation of school security guidelines was discretionary in nature and that the identifiable person-imminent harm exception to governmental immunity did not apply to the defendants' claim of immunity. *Held*:

1. The trial court improperly determined that the complaint did not contain allegations of negligence directed at the acts and omissions of the school faculty and staff during the shooting and contained only allegations of negligence directed at the acts and omissions of the defendants occurring before that date: the record demonstrated that the complaint contained allegations that both the defendants and the school faculty and staff had a ministerial duty to create and implement the school security guidelines, and that they failed to fulfill that duty, as the complaint set forth claims of negligence that were directed at the defendants' alleged breach of a ministerial duty prior to the shooting, and that related to an alleged breach of a ministerial duty by the school faculty and staff to implement school security guidelines that occurred on the date of the assault, and, therefore, the court improperly concluded that such allegations against the faculty and staff were raised for the first time in opposition to the defendants' motion for summary judgment; nevertheless, because the complaint did not contain any allegations that imple-

mentation of the guidelines by either the defendants or the faculty and staff was discretionary, the viability of the complaint could fairly be assessed only on the basis of the plaintiffs' claims, set forth in the complaint, that the defendants' development and implementation of school security protocols was ministerial in nature and not protected by governmental immunity, and, therefore, the plaintiffs' assertion that the identifiable person-imminent harm exception to governmental immunity applied if the acts or omissions of the faculty and staff were discretionary was not applicable, as that exception applies only to discretionary act immunity under § 52-557n (a) (2) (B), which the plaintiffs failed to raise in their complaint.

2. The trial court properly concluded that no genuine issue of material fact existed as to whether the defendants' creation and implementation of school security guidelines was discretionary in nature: the adoption of the school security guidelines was an act of discretion encompassed within the defendants' general duty to manage and supervise their employees and schoolchildren and, therefore, was protected by governmental immunity pursuant to § 52-557n (a) (2) (B), the statutory scheme (§§ 10-220, 10-220f and 10-21) regarding the duty of boards of education made it plain that the defendant board of education was fulfilling a discretionary duty in developing and implementing policies, and the plaintiffs failed to identify any statutory authority or rule that imposed on the defendants a ministerial duty to create or implement school security guidelines; moreover, the school security guidelines contained no directive that would support a finding that the defendants had a ministerial duty to act in a prescribed manner when responding to the shooting, as the guidelines contained qualifying language such as may or should, which indicated that the school faculty and staff had discretion to exercise judgment, the guidelines did not indicate how school faculty and staff should act in response to a shooting, and although some language in the guidelines could be construed as mandating strict compliance, case law is clear that such language did not necessarily impose on the faculty and staff a ministerial duty.

3. The plaintiffs could not prevail on their claim that the trial court erred in determining that the identifiable person-imminent harm exception to governmental immunity was inapplicable; that court was not required to address that claim in deciding the motion for summary judgment, as the plaintiffs' complaint did not allege that the conduct of the defendants and the school's faculty and staff was discretionary, the plaintiffs alleged only violations of a ministerial duty, which were mirrored in their opposition to the defendants' motion for summary judgment, and although the plaintiffs, in opposition to the motion for summary judgment, raised an argument not contained in the complaint that even if the defendants' actions were discretionary in nature, the decedents were identifiable victims subject to imminent harm, those newly fashioned allegations asserting an alternative basis for recovery in defense of a motion for summary judgment were improper and could not substitute for a timely filed amended complaint.

Argued April 17—officially released July 16, 2019

*Procedural History*

Action to recover damages for the deaths of the plaintiffs' decedents resulting from the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the action was withdrawn as against the defendant Sandy Hook Elementary School; thereafter, the court, *Wilson, J.*, granted the motion for summary judgment filed by the named defendant et al. and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Devin W. Janosov*, with whom was *Donald A. Papcsy*, for the appellants (plaintiffs).

*Charles A. Deluca*, with whom were *John W. Cannavino, Jr., Thomas S. Lambert* and *Monte E. Frank*, for

the appellees (named defendant et al.).

*Opinion*

BISHOP, J. This case arises from the horrific and tragic events that occurred on December 14, 2012, at the Sandy Hook Elementary School (school) in Newtown.[1] On that day, at approximately 9:35 a.m., Adam Lanza, bearing an arsenal of weaponry, shot his way into the locked school building with a Bushmaster XM15-E2S semiautomatic rifle and, with gruesome resolve, fatally shot twenty first grade children and six staff members, and wounded two other staff members before taking his own life.[2] The plaintiffs, Scarlett Lewis, administratrix of the estate of Jesse Lewis, and Leonard Pozner, administrator of the estate of Noah Pozner, appeal from the summary judgment rendered by the trial court in favor of the defendants, the town of Newtown and the Board of Education of the Town of Newtown, on the ground of governmental immunity. On appeal, the plaintiffs claim that the trial court erred in rendering summary judgment by concluding that (1) the plaintiffs' third revised complaint did not contain allegations of negligence directed at the acts and omissions of the school faculty and staff during the shooting on December 14, 2012, but, rather, contained only allegations of negligence directed at the defendants before December 14, 2012; (2) the defendants' creation and implementation of school security guidelines were discretionary acts in nature; and (3) the identifiable person-imminent harm exception did not apply to the defendants' claim of immunity. We affirm the judgment of the trial court.

The record reveals the following tragic facts and procedural history.[3] On December 14, 2012, at approximately 9:30 a.m., the doors to the school were locked as was the norm each morning once the school day began. At the same time, a meeting was taking place in room nine, a conference room adjacent to the principal's office and near an entranceway to the school. Attending this meeting were Principal Dawn Hochsprung, school psychologist Mary Joy Sherlach, a parent, and other staff. At approximately 9:35 a.m., Lanza blasted his way into the school through a plate glass window located next to the school doors. Hochsprung and Sherlach immediately ran from the conference room into the hallway, where they instantly were shot and killed by Lanza. Natalie Hammond, who had also left the conference room to investigate and was trailing Hochsprung and Sherlach, was shot and injured, but was able to crawl back into the conference room. After shooting Hochsprung, Sherlach, and Hammond, Lanza proceeded down a hallway while firing his rifle, striking and wounding another staff member. Lanza then apparently entered and exited the main office without shooting anyone, and proceeded down another hallway to classrooms eight and ten. While in these classrooms, Lanza shot and killed four adults and twenty first-grade

students. The plaintiffs' children, Jesse and Noah, were two of the students killed. Lanza then took his own life at approximately 9:40 a.m.

By summons and complaint served January 9, 2015,[4] the plaintiffs brought this action alleging acts of negligence on the part of the defendants, pursuant to General Statutes § 52-557n (a) (1),[5] which they claimed were substantial factors in contributing to the deaths of their children. In response, the defendants filed an answer and special defenses, in which they asserted that (1) the plaintiffs' claims were barred by the doctrine of governmental immunity, pursuant to § 52-557n (a) (2);[6] (2) as a matter of undisputed fact, their acts or failures to act were not the proximate cause of the children's deaths; and (3) they could not be held liable for the criminal acts of an individual who was not an agent or employee of either defendant.

On June 30, 2017, following a period of discovery, the defendants filed a motion for summary judgment on the grounds that (1) there was no genuine issue of material fact regarding the defendants' alleged negligence; (2) the defendants were entitled to the defense of governmental immunity pursuant to § 52-557n (a) (2); (3) Lanza's intervening criminal act destroyed any claim of proximate cause regarding any of the alleged failings of the defendants; and (4) the plaintiffs had failed to produce any expert testimony in support of their claims. In response, the plaintiffs filed a memorandum of law in opposition to the defendants' motion for summary judgment, arguing that (1) the defendants had failed to present evidence adequate to satisfy their burden on a motion for summary judgment; (2) the actions of the school faculty and staff present in the school on December 14, 2012, were not discretionary in nature but, rather, were ministerial duties prescribed by the school security guidelines, in place at that time; (3) if the duties of the faculty and staff present in the school were not ministerial but were, instead, discretionary, the conduct of Lanza in blasting his way into the school presented an imminent danger to all present in the school, and the failure of the faculty and staff in the school to follow the prescriptions set forth in the school security guidelines constituted negligence; (4) Lanza's conduct was not an intervening criminal action because the purpose of the school security guidelines was to respond to outside threats such as those posed by Lanza; and (5) the plaintiffs would address their failure to produce expert testimony by demonstrating that the expert disclosed by the defendants had no knowledge in regard to the issues presented by this case.

On May 7, 2018, after briefing and argument by counsel, the court issued a memorandum of decision granting the defendants' motion for summary judgment on the ground of governmental immunity. Finding that the complaint made no specific allegations against any of

the faculty or staff present in the school building, the court nevertheless accorded the parties a substantive analysis of this claim and determined that the school security guidelines did not impose a ministerial duty on those individuals. Rather, the court determined that the guidelines, by their own language, imposed discretionary responsibilities on the named defendants and faculty and staff. The court concluded, as well, that the acts and omissions alleged in the plaintiffs' complaint concerning the named defendants were discretionary and that no reasonable juror could find that the plaintiffs' children were subject to imminent harm at the time of the named defendants' allegedly negligent conduct in formulating, promulgating, and implementing the school security guidelines. Finally, the court concluded that even if it considered the plaintiffs' newly asserted claim in opposition to the motion for summary judgment, i.e., that the faculty and staff had a discretionary duty to implement the school security guidelines and that Lanza's initial blast into the school created an imminent risk to all present in the school building, no reasonable fact finder could find that the response of the faculty and staff to the chaotic situation that unfolded on that tragic day caused the catastrophic consequences that befell those present in the school. This appeal followed.

Before addressing the plaintiffs' claims, we first set forth our oft-recited standard of review in regard to an appeal from a trial court's rendering of summary judgment. "Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Perez* v. *Metropolitan District Commission*, 186 Conn. App. 466, 471–72, 200 A.3d 202 (2018).

"[T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *Grignano* v. *Milford*, 106 Conn. App. 648, 651, 943 A.2d 507 (2008).

We next set forth the standard of review and relevant legal principles in regard to the doctrine of governmental immunity. "[T]he determination of whether a governmental or ministerial duty exists gives rise to a question of law . . . ." *Ventura* v. *East Haven*, 330 Conn. 613, 634, 199 A.3d 1 (2019). Municipalities have traditionally been "immune from liability for [their] tortious acts at common law . . . . Governmental immunity may, however, be abrogated by statute. The state legislature possesses the authority to abrogate any governmental immunity that the common law gives to municipalities. . . . The general rule developed in the case law is that a municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. . . . Statutes that abrogate or modify governmental immunity are to be strictly construed. . . . This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of construction." (Citations omitted; internal quotation marks omitted.) *Tryon* v. *North Branford*, 58 Conn. App. 702, 720, 755 A.2d 317 (2000).

"Section 52-557n abrogates the common-law rule of governmental immunity and sets forth the circumstances in which a municipality is liable for damages to person and property. These circumstances include the negligent acts or omissions of the political subdivision or its employees or agents . . . . The section goes on to exclude liability for acts or omissions of any employee or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct and *negligent acts that involve the exercise of judgment or discretion*." (Citation omitted; emphasis added.) Id., 721.

"Municipal officials are immune from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment

that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 614–15, 903 A.2d 191 (2006). With these principles in mind, we turn to the plaintiffs' specific claims.

I

The plaintiffs first claim that the court erred in rendering summary judgment by concluding that their third revised complaint did not contain allegations of negligence directed at the acts and omissions of the school faculty and staff during the shooting on December 14, 2012, but, rather, contained only allegations of negligence directed at the acts and omissions of the defendants occurring before that date.

Viewed in the light most favorable to the plaintiffs, the operative complaint sets forth the following claims as to the defendants. The plaintiffs allege that the defendants were "under a *legal and ministerial* duty to create, enforce, and abide by" school security guidelines, "and to ensure student safety and well-being" pursuant to General Statutes §§ 10-220,[7] 10-220f,[8] and 10-221,[9] and that their failure to do so subjected them to liability pursuant to § 52-557n. (Emphasis added.) In particular, the plaintiffs allege in paragraph 30 of counts one and three, and in paragraph 31 in counts two and four, that, inter alia, the defendants were negligent because they either left school faculty and staff in a position where they either could not adhere or failed to adhere to the *mandatory* school security guidelines by failing (1) to provide school faculty and staff with necessary information, equipment, and training to properly implement the school security guidelines, including training regarding the school lockdown and evacuation plan that faculty and staff were to follow should an intruder enter the school; (2) to provide school faculty and staff with doors that could be locked from the inside; (3) to provide the teachers of classrooms eight and ten with keys to lock the doors to those classrooms; (4) to provide a security guard or other type of law enforcement personnel to assist in the implementation of the school security guidelines; (5) to provide a secure front entrance; and (6) to follow their own school security guidelines.

In addition, the plaintiffs allege in paragraph 7 of all

counts that the defendants, "under the requirements of § 10-220, instituted school safety policies and procedures *which left no area for discretion by its staff and/or agents*, concerning the safety of the schools in the Newtown Public School District, including the lockdown and evacuation plan previously practiced, *but never implemented on December 14, 2012, by the Sandy Hook Elementary staff*," and that this failure to implement resulted in the deaths of twenty students, including the plaintiffs' children. (Emphasis added.) The plaintiffs allege, as well, in paragraph 13 in counts one and three, and in paragraph 14 in counts two and three, that the "details and proscriptions of this plan *left no discretion* to the teachers and other employees, and *were to be followed* as outlined for the safety of the children at Sandy Hook Elementary School, *by mandate of*" the [defendants]. (Emphasis added.) The plaintiffs also allege in paragraph 14 of counts one and three, and in paragraph 15 in counts two and four, that the defendants "*had created a ministerial duty for all employees, agents and members* to take whatever precautions necessary and enumerated in the safety procedures" to protect the plaintiffs' children on December 14, 2012, "due to the creation of their own internal policies . . . and due to their acute knowledge of the imminent and apparent harm the intruder . . . presented to the identifiable victims of the Sandy Hook Elementary School . . . on December 14, 2012; at which time the fact [that] an intruder was present on the school premises, and the fact that the identifiable victims were in an imminent harm became apparent to the staff, agents, employees and members of the Sandy Hook Elementary School." (Emphasis added.)

In its memorandum of decision on the defendants' motion for summary judgment, the court noted that the plaintiffs had attempted to argue for the first time, in their opposition to the defendants' motion, that the defendants were liable not just for their own conduct, but also for the allegedly negligent conduct of the school faculty and staff present in the school building during the shooting on December 14, 2012. In particular, the court referred to the plaintiffs' arguments that school security guidelines imposed a ministerial duty on the faculty and staff as a "new theory of liability" not previously raised in the operative complaint.

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [W]e have long eschewed the notion that pleadings should be read in a hypertechnical manner. Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleadings with reference to the general theory upon which it proceeded, and to substan-

tial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension. . . . [E]ssential allegations may not be supplied by conjecture or remote implication . . . ." (Citation omitted; internal quotation marks omitted.) *Chicago Title Ins. Co.* v. *Accurate Title Searches, Inc.*, 173 Conn. App. 463, 479, 164 A.3d 682 (2017).

"The pleadings determine which facts are relevant and frame the issues for summary judgment proceedings or for trial. . . . The principle that a plaintiff may rely only [on] what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations [in the] complaint. . . . A complaint must fairly put the defendant on notice of the claims . . . against him. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . Only those issues raised by the [plaintiff] in the latest complaint can be tried before the jury." (Citations omitted; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 621, 99 A.3d 1079 (2014).

In *White*, the plaintiff sought to establish a malfunction theory as part of his product liability claims against the defendant. Id. The court concluded that the plaintiff failed to allege facts in his amended complaint establishing a claim regarding the malfunction theory and, thus, that the amended complaint was deficient. See id., 626–28; id., 626 ("[a] plaintiff must allege facts to put the trial court and the defendant on notice that the plaintiff intends to pursue his claim under this alternative burden of proof"). The court concluded, as well, that "the plaintiff could not properly raise an entirely new, alternative theory of liability for the first time in his opposition to the defendants' summary judgment motion when he failed to plead this theory in his complaint or put the defendants on notice that he intended to rely on it by further amending his complaint." Id., 629.

With the foregoing in mind, we turn to the plaintiffs' arguments on appeal. The plaintiffs assert that their third amended complaint did, indeed, include specific allegations of negligence against the school faculty and staff present in the building during the shooting. In particular, the plaintiffs point to the allegations contained in paragraphs 7, 13, 14, 30h and 30j of counts one and three, and in paragraphs 7, 14, 15, 31h and 31j of counts two and four, which, they assert, fairly set forth claims that the defendants had created mandatory policies and procedures for implementation by faculty and staff in the school building, and that adherence to these policies and procedures imposed a ministerial

duty, which they allege the faculty and staff had breached during the course of the shooting.

On the basis of our careful review of the pleadings, we conclude that the complaint did contain allegations that both the defendants and the school faculty and staff had a ministerial duty to create and implement the school security guidelines, and that they failed to fulfill that duty. In this regard, we disagree with the trial court that such allegations against the faculty and staff were raised for the first time in opposition to the defendants' motion for summary judgment. We note, however, that nowhere does the complaint contain any allegations that implementation of the guidelines by either the defendants or the faculty and staff was *discretionary*. The plaintiffs, rather, asserted for the first time in their opposition to the motion for summary judgment that the identifiable person-imminent harm exception applied *if the acts or omissions of the faculty and staff were discretionary*. This assertion is not applicable to the plaintiffs' argument because the identifiable person-imminent harm exception applies only to discretionary act immunity under § 52-557n (a) (2) (B), which the plaintiffs failed to raise in their complaint. See *Doe* v. *Petersen*, supra, 279 Conn. 615–16 (identifiable person-imminent harm exception recognized as one of three exceptions to *discretionary act immunity*). In sum, the viability of the plaintiffs' complaint can fairly be assessed only on the basis of the plaintiffs' claims, set forth in the complaint, that the defendants' development and implementation of school security protocols were ministerial in nature and, therefore, not protected by governmental immunity, and that the faculty and staff present in the school breached ministerial duties regarding implementation of the school security protocols.

Accordingly, we conclude that the plaintiffs' operative complaint only sets forth claims of negligence directed at the defendants' alleged breach of a ministerial duty prior to the December 14, 2012 shooting, and relating to an alleged breach of a ministerial duty by the school faculty and staff occurring on the date of the assault. We, thus, turn next to a consideration of the court's conclusion in regard to whether the duties of the defendants and faculty and staff implicated by the allegations in the operative complaint were ministerial or discretionary.[10]

II

The plaintiffs claim that the court erred in determining that the defendants' creation and implementation of the school security guidelines was discretionary in nature instead of allowing jurors the opportunity to make that decision.

In its memorandum of decision, the trial court concluded that the alleged conduct of the defendants in

creating and implementing the school security guidelines was discretionary in nature because no statute, policy, or rule imposed clear ministerial duties on the defendants. In particular, after determining that the supervision of school employees and students is generally considered discretionary, the court looked to §§ 10-220, 10-220f and 10-221, and concluded that "none of these sections limited the defendants' exercise of discretion in their supervision and management of the school or imposed clear, ministerial duties on the defendants with regards to the type of security measures or protocols they were to implement." We agree with the court's conclusion.

As previously noted, our determination of whether governmental immunity applies to the allegations of a complaint is generally a question of law subject to plenary review. See *Ventura* v. *East Haven*, supra, 330 Conn. 634–37. In addressing the question of whether the general supervision of public school employees is a discretionary or ministerial function, our Supreme Court has concluded that the administrators' "duty to ensure that school staff members adequately discharged their assignments [is] discretionary because it [is] encompassed within their general responsibility to manage and supervise school employees." *Strycharz* v. *Cady*, 323 Conn. 548, 569, 148 A.3d 1011 (2016), overruled in part on other grounds by *Ventura* v. *East Haven*, 330 Conn. 613, 637 and n.12, 199 A.3d 1 (2019). In addition, our case law has implicitly determined that the supervision of public school children is generally considered a discretionary act. See, e.g., *Martinez* v. *New Haven*, 328 Conn. 1, 8–9, 176 A.3d 531 (2018) (framing general supervision of student at public school as discretionary act subject to identifiable person-imminent harm exception); *McCarroll* v. *East Haven*, 180 Conn. App. 515, 522–23, 183 A.3d 662 (2018) (same). Our case law also has made clear that a plaintiff bringing a cause of action against a municipality or government officials must allege and, thus, demonstrate the existence of a genuine issue of material fact, that the acts or omissions complained of are ministerial, rather than discretionary, in nature. See *Violano* v. *Fernandez*, 280 Conn. 310, 323–24, 907 A.2d 1188 (2006); id., 324 ("plaintiffs . . . failed to allege that there was any rule, policy, or directive that prescribed the manner in which [one of the defendants] was to secure the property" that was under his care); *Colon* v. *New Haven*, 60 Conn. App. 178, 182–83, 758 A.2d 900 (summary judgment properly rendered on ground of governmental immunity where defendant's "poor exercise of judgment" formed basis of complaint, rather than directive specifically describing manner in which defendant was to act), cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000).

On the basis of the foregoing, it is clear that the adoption of the school security guidelines by the defendants was an act of discretion encompassed within their

general duty to manage and supervise their employees and the schoolchildren, and, therefore, was protected by governmental immunity pursuant to § 52-557n (a) (2) (B). As discussed in part I of this opinion, the plaintiffs' complaint alleged that the defendants were "under a legal and ministerial duty to create, enforce, and abide by" school security guidelines, "and to ensure student safety and well-being" pursuant to §§ 10-220, 10-220f and 10-221, and that their failure to do so subjected them to liability pursuant to § 52-557n. The language of the pertinent statutes and, indeed, the statutory scheme regarding the duty of boards of education, make it plain that in developing and implementing policies, the board is fulfilling a discretionary duty. See *Washburne* v. *Madison*, 175 Conn. App. 613, 623, 167 A.3d 1029 (2017) ("[i]n order to create a ministerial duty, there must be a city charter provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner" [internal quotation marks omitted]), cert. denied, 330 Conn. 971, 200 A.3d 1151 (2019). Section 10-220 (a) states, generally, that boards of education "shall provide . . . (4) a safe school setting," and § 10-220f states that boards of education may, but are not required to, establish a school safety committee. Furthermore, § 10-221 does not specifically address school safety, but, rather, states that boards of education shall implement policies to regulate several other unrelated areas as part of their general duty to manage and supervise school activity. Accordingly, we agree with the trial court and conclude that, because the plaintiffs failed to identify any statutory authority or rule that imposed upon the defendants a ministerial duty to create or implement the school security guidelines that the defendants allegedly failed to abide by, no genuine issue of material fact existed as to whether the defendants' acts were discretionary in nature.

The plaintiffs also claim that the trial court erred in rendering summary judgment because the school security guidelines adopted by the defendants imposed upon the school faculty and staff a ministerial duty to act in a prescribed manner during the shooting. The language in the guidelines referenced by the plaintiffs contradicts this claim.

In conjunction with the defendants' motion for summary judgment, the parties submitted several school security guidelines. The plaintiffs first referenced the "Newtown Public Schools Emergency Lockdown Guidelines for Faculty and Staff," which states that "[u]pon notification of personal observation that an emergency situation exists, it *may* become necessary for school administration to commence a lockdown," and in such event "teachers and support staff *should* promptly gather their students and those in the immediate vicinity, and escort them into a classroom or securable room . . . that can be locked and secured from

the inside." (Emphasis added; internal quotation marks omitted.) This guideline additionally states that "[u]pon notification or personal observation that an imminent emergency situation exists, it *may* become necessary for school administration to commence a Lockdown— Code Blue." (Emphasis added; internal quotation marks omitted.) In the event of this type of lockdown, the guideline states that "staff *should* immediately gather students, and if not already, escort them inside a classroom or securable room that can be locked and secured from the inside." (Emphasis added.) Language at the bottom of the first page of this guideline states that "[f]ailure to comply with these rules can ultimately jeopardize the safety of all persons inside the classroom or neighboring classrooms in the immediate proximity." Supplementing this guideline is the "Newtown Public Schools Faculty-Staff Emergency Response Guide," which sets forth emergency terms and command actions that faculty and staff can use in the event of a lockdown.

The plaintiffs next referenced an "Incident Command System Overview," which states that it "is a field management system that has a number of basic system features. Because of these features, [it] has the flexibility and adaptability to be applied to a wide variety of incidents and events both small and large." This guideline provides a structured plan that school faculty and staff can use to manage and respond to a particular incident. Finally, the plaintiffs referenced the "Newtown, Connecticut Emergency Operations Plan Annex L—School Emergency," which provides, inter alia, that "[i]n the event of an emergency, the primary function of all school personnel is to provide maximum protection for students and to reunite students with their parents as soon as it is feasible." This guideline sets forth certain tasks for school faculty and staff in the event of an emergency. In particular, it provides that "[p]rincipals are responsible for . . . [a]ctivating the evacuation or take shelter message or signal to instruct teachers to take protective action(s) for themselves and their students," and "[s]upervising plan implementation." It states, as well, that "[t]eachers are responsible for . . . [e]xercising control and discipline in their supervision of students in the evacuation and take shelter modes," and "[t]aking all necessary precautions to protect the school facility." The guideline also lists how school faculty and staff may respond to various types of emergencies and implement evacuation measures, but does not specifically discuss actions to take in the event of a school shooting.

After a thorough review of the school security guidelines referenced by the plaintiffs, we conclude that they contain "no directive of the type required to support a finding that the [defendants] had a [ministerial] duty" to act in a prescribed manner when responding to the events that unfolded on December 14, 2012. *Ugrin* v.

*Cheshire*, 307 Conn. 364, 391, 54 A.3d 532 (2012). In *Ugrin*, our Supreme Court determined that language in a letter by town counsel that described the danger posed by mines that were operated in the vicinity of the plaintiffs' properties and contained legal advice to the town regarding such mines did not constitute "a directive to the town giving rise to a ministerial duty because [the letter] . . . contain[ed] the qualifying words *should* or *could*, which indicate[d] that the town had discretion to exercise its judgment in deciding whether to follow [the town counsel's] advice." (Emphasis added; internal quotation marks omitted.) Id., 392. The court determined, as well, that "the plaintiffs fail[ed] to identify any other comment that could be construed as an actual directive to the town that it had no discretion to ignore." Id.; see also *Colon* v. *New Haven*, supra, 60 Conn. App. 183.

In the present case, the school security guidelines contained qualifying language such as *may* or *should*, which indicated that the school faculty and staff had discretion to exercise judgment in following them, and they set forth broad structures that did not indicate how school faculty and staff should act in response to a shooting. Additionally, they did not contain any language placing upon the school faculty and staff a ministerial duty to act in a specific manner in the event of an emergency such as the one that occurred on December 14, 2012. Although some language, such as the indication of the consequences of a failure to comply with the guidelines during a school lockdown, may be construed as mandating strict compliance, our case law is clear that such language does not necessarily impose upon the faculty and staff a ministerial duty. See *Coley* v. *Hartford*, 312 Conn. 150, 169, 95 A.3d 480 (2014) ("[c]ontrary to the plaintiff's contention, the word *shall* does not necessarily give rise to a ministerial duty to remain at the scene when the policy language, read in its entirety, clearly relies upon the police officer's discretion" [emphasis added; internal quotation marks omitted]), overruled in part on other grounds by *Ventura* v. *East Haven*, 330 Conn. 613, 637 and n.12, 199 A.3d 1 (2019); *Mills* v. *Solution, LLC*, 138 Conn. App. 40, 51, 50 A.3d 381 ("[a]lthough the word *shall* can connote a mandatory command, the language of the statute, read as a whole, involves discretionary acts" [emphasis added; internal quotation marks omitted]), cert. denied, 307 Conn. 928, 55 A.3d 570 (2012). Accordingly, we agree with the trial court and conclude that no reasonable juror could have found that the school security guidelines imposed a ministerial duty upon the faculty and staff.

### III

Finally, the plaintiffs claim that the court erred in determining that if the complaint can fairly be read as asserting that the defendants and school faculty and

staff breached a discretionary duty in the creation, promulgation, and implementation of the school security guidelines, the identifiable person-imminent harm exception was inapplicable.[11]

We need not address this claim because, as previously discussed in part I of this opinion, nowhere in the operative complaint do the plaintiffs allege that the conduct of the defendants and faculty and staff was discretionary in nature. Paragraphs 7, 13, 14, 30h and 30j of counts one and three, and paragraphs 7, 14, 15, 31h and 31j of counts two and four of the complaint all make clear that the plaintiffs only allege violations of a ministerial duty. This is further supported by assertions in the plaintiffs' opposition to the defendants' motion for summary judgment, which first mirrors the complaint by stating that "the actions of the defendants . . . were not of a discretionary nature," but then raises the argument not contained in the complaint that, "even if they were discretionary in nature, the deceased plaintiffs were identifiable victims . . . and . . . clearly an imminent harm was before them . . . ."

In adjudicating a motion for summary judgment, a court is not required to address allegations that are not made in the complaint. See *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 627–28, 985 A.2d 349 (2009) ("[i]n adjudicating the motions for summary judgment, the [trial] court was not required to address trespass because the operative complaint did not contain counts alleging trespass"), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010). Because the plaintiffs failed to allege the applicability of the identifiable person-imminent harm exception to the discretionary acts of the defendants in the operative complaint, we conclude that the court was not required to address this claim at summary judgment.[12] In sum, newly fashioned allegations asserting an alternative basis for recovery in defense of a motion for summary judgment are improper and may not substitute for a timely filed amended complaint.

In reaching our conclusion in this case, we concur with the trial court and find apt our Supreme Court's closing language in *Coley* v. *Hartford*, supra, 312 Conn. 172: "The facts in the present case are undeniably tragic, and, understandably, the parties are left questioning whether anything more could have been done to prevent the realities that unfolded. It is, however, precisely because it can always be alleged, in hindsight, that a public official's actions were deficient that we afford limited governmental liability for acts that necessarily entailed the exercise of discretion."

For the reasons set forth in this opinion, we conclude that the trial court properly rendered summary judgment in the defendants' favor on the ground of governmental immunity pursuant to § 52-557n (a) (2) (B).[13]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The school was initially named as a defendant in this case, but the plaintiffs subsequently withdrew their claims against it.

[2] The state attorney's report on the shooting indicates that, in addition to the Bushmaster semiautomatic rifle found in the same classroom as the shooter's body, police recovered from the shooter's person a Sig Sauer P226, nine millimeter semiautomatic pistol and, near his body, a Glock 20, ten millimeter semiautomatic pistol. Substantial quantities of ammunition for these weapons were found on the shooter's person or near his body. In the shooter's car in the parking lot outside the school, the police also found an Izhmash Saiga-12, twelve gauge semiautomatic shotgun. See Division of Criminal Justice, State of Connecticut, Report of the State's Attorney for the Judicial District of Danbury on the Shootings at Sandy Hook Elementary School and 36 Yogananda Street, Newtown, Connecticut on December 14, 2012.

[3] See Division of Criminal Justice, State of Connecticut, Report of the State's Attorney for the Judicial District of Danbury on the Shootings at Sandy Hook Elementary School and 36 Yogananda Street, Newtown, Connecticut on December 14, 2012.

[4] The plaintiffs' third revised complaint filed September 1, 2016, which substantially contains the same allegations of negligence against the defendants, is the operative complaint in this appeal.

[5] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[6] General Statutes § 52-557n (a) (2) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[7] General Statutes § 10-220 (a) provides in relevant part: "Each local or regional board of education shall . . . provide an appropriate learning environment for all its students which includes (1) adequate instructional books, supplies, materials, equipment, staffing, facilities and technology, (2) equitable allocation of resources among its schools, (3) proper maintenance of facilities, and (4) a safe school setting . . . and shall perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law."

[8] General Statutes § 10-220f provides: "Each local and regional board of education may establish a school district safety committee to increase staff and student awareness of safety and health issues and to review the adequacy of emergency response procedures at each school. Parents and high school students shall be included in the membership of such committees."

[9] General Statutes § 10-221 provides in relevant part: "(a) Boards of education shall prescribe rules for the management, studies, classification and discipline of the public schools and, subject to the control of the State Board of Education, the textbooks to be used; shall make rules for the control, within their respective jurisdictions, of school library media centers, including Internet access and content, and approve the selection of books and other educational media therefor, and shall approve plans for public school buildings and superintend any high or graded school in the manner specified in this title.

"(b) . . . [E]ach local and regional board of education shall develop, adopt and implement written policies concerning homework, attendance, promotion and retention. The Department of Education shall make available model policies and guidelines to assist local and regional boards of education in meeting the responsibilities enumerated in this subsection.

"(c) Boards of education may prescribe rules to impose sanctions against pupils who damage or fail to return textbooks, library materials or other educational materials. Said boards may charge pupils for such damaged or lost textbooks, library materials or other educational materials and may withhold grades, transcripts or report cards until the pupil pays for or returns the textbook, library book or other educational material.

"(d) . . . [E]ach local and regional board of education shall develop, adopt and implement policies and procedures . . . for (1) dealing with the use, sale or possession of alcohol or controlled drugs . . . by public school

students on school property, including a process for coordination with, and referral of such students to, appropriate agencies, and (2) cooperating with law enforcement officials.

"(e) . . . [E]ach local and regional board of education shall adopt a written policy and procedures for dealing with youth suicide prevention and youth suicide attempts. Each such board of education may establish a student assistance program to identify risk factors for youth suicide, procedures to intervene with such youths, referral services and training for teachers and other school professionals and students who provide assistance in the program.

"(f) . . . [E]ach local and regional board of education shall develop, adopt and implement written policies and procedures to encourage parent-teacher communication. These policies and procedures may include monthly newsletters, required regular contact with all parents, flexible parent-teacher conferences, drop-in hours for parents, home visits and the use of technology such as homework hot lines to allow parents to check on their children's assignments and students to get assistance if needed. . . ."

[10] We agree, also, with the trial court's comment that even if the plaintiffs' operative complaint could be construed as setting forth a claim of negligence against individual members of the school faculty or staff on the day of the shooting, no reasonable juror could find negligence in the instinctive and heroically protective reactions of Hochsprung, Sherlach and Hammond in immediately running to the hallway to investigate the cause of a thunderous crash by the entrance door only to be cut down by a fusillade of bullets, i.e., that it was foreseeable that their conduct could have led to the harm suffered by the plaintiffs. See *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191–92, 74 A.3d 1278 (2013) ("Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . [T]he test for the existence of a legal duty entails [1] a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and [2] a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." [Internal quotation marks omitted.]).

The faculty and staff present at the school during the shooting were confronted with a chaotic and violent situation, made evident by later descriptions of the noise variously as "banging sounds like someone kicking a door"; "gunfire from the lobby area adjacent to the conference room"; "a noise coming from the front of the school sounding like a metal pipe hitting the floor"; and, from Hammond who was in the conference room, "a loud banging noise." Under such unimaginable circumstances, no reasonable juror could have found that the acts or omissions of the individual members of the faculty and staff amounted to negligence.

[11] Although our jurisprudence recognizes three exceptions to discretionary act immunity, the plaintiffs claim only that the identifiable person-imminent harm exception applies. See, e.g., *St. Pierre* v. *Plainfield*, 326 Conn. 420, 434, 165 A.3d 148 (2017) (noting that three exceptions to discretionary act immunity are recognized, but only identifiable person-imminent harm exception was relevant).

[12] We recognize that the trial court provided substantial analysis in regard to whether the identifiable person-imminent harm exception was applicable to the plaintiffs' claims. Although we believe that such analysis was unnecessary because it involved a claim outside the contours of the complaint, we have no disagreement with the conclusions reached by the trial court.

[13] Because we agree with the trial court's analysis regarding governmental immunity, we need not reach the defendants' alternative claim for affirmance regarding proximate cause and the superseding criminal conduct of Lanza.