******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AMAADI COLE *v.* CITY OF NEW HAVEN ET AL.
## (SC 20425)

Robinson, C. J., and Palmer, McDonald,
D'Auria, Mullins and Kahn, Js.*

*Syllabus*

The plaintiff sought to recover damages from the defendants, the city of New Haven and one of its police officers, C, in connection with injuries the plaintiff sustained when he crashed his dirt bike to avoid colliding with C's police cruiser. C was driving northbound on a New Haven street when she spotted a group of dirt bikes and all-terrain vehicles driving the other way down the street in violation of a city ordinance. Without giving any warning or operating her lights or sirens, C executed a roadblock maneuver by pulling her cruiser diagonally across the double yellow line into the southbound lane and directly in front of the group. To avoid a head-on collision, the plaintiff jumped the curb onto the sidewalk, where he lost control of his dirt bike and struck a tree. The plaintiff alleged, inter alia, that C was negligent in responding to the dirt bikes and all-terrain vehicles because she initiated a pursuit and engaged in a roadblock maneuver in violation of the city police department's pursuit policy and the uniform statewide pursuit policy set forth in the applicable state regulation (§ 14-283a-4 (d) (5)), both of which prohibit the use of roadblocks, except when necessary to save human life or when specifically authorized by a supervisor, respectively. Accordingly, the plaintiff claimed that C violated a ministerial duty and that the city was liable pursuant to statute (§ 52-557n (a) (1) (A)) for the negligent acts of its employee. The defendants moved for summary judgment, claiming that C was engaged in a discretionary act when responding to the dirt bikes and all-terrain vehicles, and that the defendants therefore were protected by governmental immunity pursuant to § 52-557n (a) (2) (B). In opposing the defendants' motion, the plaintiff also relied on the deposition testimony of M, a sergeant with the city's police department, that, at the time of the incident, it was the police department's policy not to pursue dirt bikes or all-terrain vehicles on public roads as a matter of public safety, and that C had breached the department's pursuit policy by, inter alia, executing a complete roadblock without providing an opening for oncoming vehicles. The trial court granted the defendants' motion and rendered judgment for the defendants, concluding that they were entitled to governmental immunity. Crediting C's deposition testimony, the court concluded that there was no evidence that C engaged in a pursuit, and, accordingly, neither the statewide nor the department pursuit policy was applicable to the present case. The court instead determined that C's response was discretionary rather than ministerial and that, even if C had initiated a pursuit, the language of the statewide and department pursuit policies nonetheless rendered her decision to do so discretionary. The plaintiff appealed from the trial court's judgment. *Held* that the trial court improperly granted the defendants' motion for summary judgment on the ground that C was engaged in a discretionary act when responding to the dirt bikes and all-terrain vehicles, and, therefore, this court reversed the trial court's judgment and remanded the case for further proceedings: the portions of the statewide and department pursuit policies relating to roadblocks and the pursuit of dirt bikes and all-terrain vehicles presented the type of bright-line directives that created a ministerial duty regarding the manner of pursuit, and, viewing the facts in the light most favorable to the plaintiff, there was a genuine issue of material fact with respect to whether a pursuit had occurred within the meaning of those policies, which was a predicate for establishing whether C had violated a ministerial duty; moreover, although M was not C's direct supervisor, his employment with the department gave him sufficient knowledge, training, and experience with respect to the department's policies and procedures such that his testimony was relevant to establishing the existence of a ministerial duty.

Argued May 4—officially released October 15, 2020**

Action to recover damages for the defendants' alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams*, *J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed. *Reversed*; *further proceedings*.

*James J. Healy*, with whom was *Thomas M. McNamara*, for the appellant (plaintiff).

*Thomas E. Katon*, with whom were *Philip G. Kent*, *Roderick Williams* and, on the brief, *Adam D. Miller*, for the appellees (defendants).

*Opinion*

ROBINSON, C. J. This appeal requires us to consider the limits of our recent decision in *Borelli* v. *Renaldi*, 336 Conn. 1, 243 A.3d 1064 (2020), with respect to whether applicable state and municipal policies render a police officer's acts during a pursuit of a motorist ministerial, rather than discretionary, for purposes of governmental immunity. The plaintiff, Amaadi Cole, brought this negligence action against the defendants, the city of New Haven (city) and one of its police officers, Nikki Curry, seeking damages for personal injuries sustained when Curry pulled her police cruiser directly into an oncoming traffic lane in which the plaintiff was traveling on his dirt bike, causing him to swerve and strike a tree. The plaintiff appeals[1] from the granting of summary judgment by the trial court in favor of the defendants on the ground that they were entitled to governmental immunity for discretionary acts pursuant to General Statutes § 52-557n (a) (2) (B).[2] On appeal, the plaintiff claims, inter alia, that the trial court incorrectly determined that Curry's decision to drive her cruiser into the oncoming traffic lane was a discretionary act because her actions violated several policies that imposed ministerial duties regarding roadblocks, the operation of police vehicles, and pursuits. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The record reveals the following facts, which we view in the light most favorable to the plaintiff, who was the nonmoving party on the motion for summary judgment. See, e.g., id., 8. On July 16, 2011, at approximately 6:43 p.m., Curry was operating a city police cruiser on Howard Avenue in New Haven in a northbound direction at approximately thirty miles per hour. Curry was on duty and on the lookout for dirt bikes and "quads,"[3] the operation of which on public streets violates a city ordinance, because several anonymous complaints had been received of dirt bikes operating "reckless[ly]" in the vicinity of Ella T. Grasso Boulevard and Howard Avenue. Curry then spotted a group of approximately seven dirt bikes and quads traveling in a southbound direction on Howard Avenue. That group, which included the plaintiff, was traveling at approximately twenty-five miles per hour and not doing any wheelies or other stunts.

When she spotted the group of dirt bikes, Curry suddenly and without warning executed a roadblock maneuver by pulling her cruiser diagonally across the double yellow line into the southbound lane directly in front of them. To avoid a head-on collision with Curry's cruiser, which was not operating with lights or sirens at the time,[4] three of the bikes jumped the curb onto the sidewalk, and one veered into the northbound lane. The plaintiff was riding one of the dirt bikes that went up onto the sidewalk, at which point he lost control of

the bike and struck a tree. When the various vehicles stopped, the front of Curry's police cruiser was about ten feet from the tree and the plaintiff's bike. Curry then radioed for medical and additional police assistance. The plaintiff was transported by ambulance to Yale-New Haven Hospital, where he was treated for severe personal injuries, including skull fractures, optic nerve damage resulting in a near total loss of vision, memory loss and cognitive deficits, and permanent facial scarring.[5]

The plaintiff brought this negligence action against the defendants in July, 2013. In the operative complaint, the plaintiff claims, inter alia, that Curry (1) "violated proper police department procedures by pulling into the oncoming lane of traffic," (2) engaged in a roadblock or attempted roadblock in violation of certain policies, including New Haven Department of Police Services General Order No. 94-2 (General Order) and the Department of Public Safety's Uniform Statewide Pursuit Policy, namely, § 14-283a-4 (d) (5) of the Regulations of Connecticut State Agencies (Statewide Policy), (3) drove her vehicle into the plaintiff's travel lane in violation of certain motor vehicle statutes, namely, General Statutes §§ 14-230,[6] 4-236[7] and 14-242,[8] and (4) "began a pursuit when [it] was unwarranted under the circumstances, in violation of proper police procedure . . . ."[9] With respect to the city, the plaintiff claimed that it was liable (1) directly for Curry's negligence under § 52-557n, and (2) to indemnify Curry under General Statutes § 7-465 (a). The defendants filed an answer, alleging, inter alia, the special defense of governmental immunity for discretionary acts under § 52-557n (a) (2) (B). In avoidance of that special defense, the plaintiff claimed that Curry had violated ministerial duties and that the plaintiff was an identifiable person subject to imminent harm.

Following the completion of discovery, the defendants moved for summary judgment on governmental immunity grounds under § 52-557n (a) (2) (B), claiming that Curry's actions were discretionary and that no genuine issue of material fact exists concerning the identifiable victim-imminent harm exception to discretionary act immunity. In its memorandum of decision granting the defendants' motion, the trial court rejected the plaintiff's claim that Curry had breached a ministerial duty by executing a roadblock maneuver that was proscribed by the General Order, the Statewide Policy, and several motor vehicle statutes, including §§ 14-230, 14-236 and 14-242. The trial court also rejected the plaintiff's reliance on the expert testimony of Carlos Maldonado, a sergeant with the city's police department, that Curry had breached police pursuit policy by blocking the oncoming vehicles without providing an opening to get by and by pursuing riders on dirt bikes or quads. Instead, the trial court agreed with the defendants' argument that the pursuit policies were inapplicable because there was no evidence of an actual "chase" that would

constitute a "pursuit," observing that Curry had testified at her deposition that she had activated her lights to warn other motorists and simply changed lanes while operating her cruiser. Accordingly, the trial court concluded that Curry had "exercised her discretion in responding to a situation that could pose a threat to others," namely, the report of dirt bikes and quads that had been seen operating illegally on city streets. The trial court also concluded that, even if Curry had initiated a pursuit, the language of the General Order and the Statewide Policy rendered her decision to do so discretionary in nature. With respect to the claimed statutory violations of §§ 14-230 and 14-236, which require vehicles to stay to the right and within a single lane, and § 14-242, which permits only those turns that can be made with "reasonable safety," the trial court held that Curry was privileged to disregard those statutes under the emergency vehicle statute, General Statutes § 14-283,[10] because her operation of the police cruiser was a discretionary act. The trial court further concluded that there was no genuine issue of material fact with respect to whether the identifiable person-imminent harm exception to discretionary act immunity applied. Finally, the trial court determined that the city would not be liable for indemnification under § 7-465 (a), given the governmental immunity shield of § 52-557n (a) (2) (B). Accordingly, the trial court granted the defendants' motion for summary judgment and rendered judgment accordingly. This appeal followed.

On appeal, the plaintiff claims that the trial court improperly granted the motion for summary judgment on the ground that Curry's actions were discretionary acts afforded governmental immunity under § 52-557n (a) (2) (B) because she had violated a ministerial duty not to pull her cruiser into the plaintiff's travel lane. To establish that ministerial duty, the plaintiff relies on, inter alia,[11] the testimony of Maldonado, a New Haven police sergeant, and the General Order and the Statewide Policy, which strictly limit the use of roadblocks and preclude the chasing of dirt bike riders. Citing, among other cases, *Strycharz* v. *Cady*, 323 Conn. 548, 148 A.3d 1011 (2016), the plaintiff emphasizes that Maldonado's testimony alone was sufficient to establish the existence of a ministerial duty in this respect. To this end, the plaintiff observes that, "[i]n short . . . Curry was either chasing the plaintiff or driving into the lane of traffic of the bikes. Either action violated a clear directive."

In response, the defendants contend that there was no ministerial duty because the various pursuit policies cited by the plaintiff are not applicable because "[t]his is not a pursuit case," as Curry was engaged in "a traffic control function while on patrol . . . thereby partially blocking a portion of Howard Avenue," and "never chased the plaintiff or any of the other riders." The defendants argue that Curry's activation of the cruiser's

lights and sirens did not ipso facto constitute a pursuit under the applicable policies. Relying heavily on *Ventura* v. *East Haven*, 330 Conn. 613, 199 A.3d 1 (2019), the defendants also contend that *Strycharz* is distinguishable and that Maldonado's testimony is insufficient to establish the existence of a ministerial duty because it was "vague and contradictory" with respect to a city policy prohibiting blocking the road and because Maldonado was not Curry's "direct supervisor." We agree, however, with the plaintiffs and conclude that the trial court improperly granted the defendants' motion for summary judgment because the plaintiff has established the existence of a ministerial duty under the applicable city and state policies and because a genuine issue of material fact exists with respect to the factual predicate for that ministerial duty.[12]

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle[s] him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy [this] burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book [§ 17-45] . . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 53, 213 A.3d 1110 (2019).

"The following principles of governmental immunity are pertinent to our resolution of the plaintiff's claims. The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts.

. . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [a ministerial act] refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts. . . .

"The tort liability of a municipality has been codified in § 52-557n. Section 52-557n (a) (1) provides that [e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves by providing that they will not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . .

"For purposes of determining whether a duty is discretionary or ministerial, this court has recognized that [t]here is a difference between laws that impose general duties on officials and those that mandate a particular response to specific conditions. . . . A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment [or discretion] upon the propriety of the act being done. . . . In contrast, when an official has a general duty to perform a certain act, but there is no city charter provision, ordinance, regulation, rule, policy, or any other directive [requiring the government official to act in a] prescribed manner, the duty is

deemed discretionary. . . .

"In accordance with these principles, our courts consistently have held that to demonstrate the existence of a ministerial duty on the part of a municipality and its agents, a plaintiff ordinarily must point to some statute, city charter provision, ordinance, regulation, rule, policy, or other directive that, by its clear language, compels a municipal employee to act in a prescribed manner, without the exercise of judgment or discretion. . . . Because the construction of any such provision, including a municipal rule or regulation, presents a question of law for the court . . . whether the provision creates a ministerial duty gives rise to a legal issue subject to plenary review on appeal. . . .

"Because this appeal concerns the actions of police officers and the [city] police department, we also observe that [i]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . Indeed, this court has long recognized that it is not in the public's interest to [allow] a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a [police officer's] discretionary professional duty. Such discretion is no discretion at all. . . . Thus, as a general rule, [p]olice officers are protected by discretionary act immunity when they perform the typical functions of a police officer." (Citations omitted; internal quotation marks omitted.) *Borelli* v. *Renaldi*, supra, 336 Conn. 10–13; see also *Coley* v. *Hartford*, 312 Conn. 150, 164–65, 95 A.3d 480 (2014) (noting, with respect to officers' alleged failure to "adhere to specific police response procedures . . . the considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis"); *Shore* v. *Stonington*, 187 Conn. 147, 153–55, 157, 444 A.2d 1379 (1982) (whether to detain suspected drunk driver was discretionary act).

Having reviewed the record, we first conclude that there is a genuine issue of material fact with respect to the predicate for a ministerial duty, namely, whether a "pursuit" occurred, thus rendering summary judgment improper in this case. See *Ventura* v. *East Haven*, supra, 330 Conn. 636 n.11 ("although the ultimate determination of whether governmental immunity applies is typically a question of law for the court, there may well be disputed factual issues material to the applicability of the defense, the resolution of which are properly left to the trier of fact"). First, Curry's decision to pull her cruiser across the oncoming traffic lane of Howard Avenue may be viewed in the light most favorable to the plaintiff as a roadblock maneuver intended to stop the bikers, thus implicating city and state pursuit policies that clearly compelled her to "act in a prescribed

manner, without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Borelli* v. *Renaldi*, supra, 336 Conn. 12. Although the defendants are correct that, under the General Order, merely activating the cruiser's lights and siren to effectuate a stop did not ipso facto constitute a pursuit under the applicable policies; but see footnote 4 of this opinion; Curry's act of using her vehicle to apprehend the plaintiff and the bikers raises an issue of material fact as to whether a pursuit occurred in light of her deposition testimony that she activated her lights and sirens and that some members of the group reacted to seeing her by fleeing, at which point she executed the maneuver at issue in this case. Specifically, the General Order does not define the term "pursuit," and the Statewide Policy defines that term more broadly than the "chase" envisioned by the trial court and the defendants. Consistent with its authorizing statute; see General Statutes § 14-283a (b); the Statewide Policy does not expressly contemplate a "chase" but, instead, defines "pursuit" as "an attempt by a police officer in an authorized emergency vehicle to apprehend any occupant of another moving motor vehicle, when the driver of the fleeing vehicle is attempting to avoid apprehension by maintaining or increasing the speed of such vehicle or by ignoring the police officer's attempt to stop such vehicle." Regs., Conn. State Agencies § 14-283a-3 (1). The use of the cruiser under these circumstances to physically attempt to apprehend the plaintiff and the other bikers may reasonably be viewed as a pursuit—albeit brief—consistent with that definition and the public safety goals that underlie the adoption of the Statewide Policy, which recognizes that "[p]ursuits of fleeing motor vehicles may present a danger to the lives of the public, officers, and those vehicle occupants involved in the pursuit." Regs., Conn. State Agencies § 14-283a-2; see also *Borelli* v. *Renaldi*, supra, 155–58 (*Ecker, J.*, dissenting) (discussing legislative history of police pursuit statute, § 14-283a).

Turning to the applicable policies governing such pursuits, we note that the first such written policy is the city's General Order, which provides: "Roadblocks will not [be] utilized EXCEPT in cases where this action is necessary to save human life." There is nothing in the record—including any deposition testimony from Curry herself—to indicate a perception that anyone's life was in immediate danger before Curry executed the roadblock maneuver. Second, the Statewide Policy, which the Department of Public Safety promulgated pursuant to the police pursuit statute; see General Statutes § 14-283a (b); provides in relevant part: "Roadblocks are prohibited unless specifically authorized by the supervisor in charge after consideration of the necessity of applying deadly physical force to end the pursuit." Regs., Conn. State Agencies § 14-283a-4 (d) (5). There is nothing in the record to indicate that Curry even

attempted to obtain supervisory approval to block Howard Avenue with her cruiser in order to stop the plaintiff. Accordingly, Curry's actions with her cruiser, viewed in the light most favorable to the plaintiff, are an unmistakable violation of these written city and state policies.

Further, the deposition testimony of Maldonado, a New Haven police sergeant, amplifies the applicability of the General Order and the Statewide Policy under the circumstances of this case, and provides evidence from which a reasonable fact finder could conclude that Curry violated numerous ministerial duties with respect to pursuits and police officer interactions with dirt bikes. Maldonado stated that, in 2011, the policy of the city's police department was not to "chase" or "pursue" vehicles such as dirt bikes or quads on public roads as a matter of public safety. An officer was permitted only to "follow at a normal . . . speed but not chase." Maldonado stated that the practice consistent with that policy was not to "intervene, chase or pursue" but to "[g]et descriptive . . . information, and possibly seize the bike later based on any of the other information that the department can collect . . . ."[13]

Turning to roadblocks, we observe that Maldonado testified that, consistent with that policy, he would never seek to safely stop an oncoming dirt bike or quad by driving his vehicle into the opposing lane of traffic and that officers were never instructed or trained to do so. Furthermore, a complete roadblock violates police department policy, as "there always has to be an opening for that vehicle to be able to continue on." Even if lights and sirens are used, a roadblock is not appropriate for a "traffic law" violation. Maldonado stated that an officer could engage in a pursuit only for felonies "of a serious nature" and not "for minor violations."[14] When the facts are viewed in the light most favorable to the plaintiff, we conclude that Maldonado's testimony, in combination with the General Order and the Statewide Policy, establishes the existence of a ministerial duty as a matter of law not to use a complete roadblock maneuver to stop the plaintiff simply for violating the city's dirt bike ordinance, and also provides evidence from which a reasonable fact finder could conclude that Curry violated that ministerial duty.

The defendants rely, however, on our recent decision in *Ventura* v. *East Haven*, supra, 330 Conn. 640 and n.14, for the proposition that Maldonado's deposition was (1) "vague and contradictory" with respect to a city policy prohibiting blocking the road, and (2) insufficient as a matter of law to establish the existence of a ministerial duty because he was not Curry's "direct supervisor." We disagree. In *Ventura*, we held that the tow rules of the town of East Haven applied only to towing operators and did not create a ministerial duty on the part of its police officers to have a truck towed when the officer could not confirm during a traffic stop that its driver had a valid driver's license or proper vehicle registration.

Id., 640–42. We rejected the plaintiff's argument that the jury reasonably could have found, based on the testimony of an East Haven police lieutenant, that the patrol officer had a ministerial duty to have the truck towed, "independent of any duty allegedly imposed on him by the tow rules." Id., 628, 639. We emphasized that the lieutenant had "testified unequivocally *that there was no rule*, written or unwritten, dictating the manner in which an East Haven police officer must handle an unregistered vehicle or one with misused plates. [The lieutenant] also testified that an officer's decision to tow a vehicle is *always* within the officer's discretion."[15] (Emphasis in original.) Id., 639–40; see id., 640 ("the plaintiff's own expert testified that he was aware of no Connecticut law requiring an officer to tow an unregistered vehicle or a vehicle determined to have misused plates").

In the *Ventura* footnote, on which the defendants in the present appeal rely, we observed that the plaintiff in *Ventura* had relied on *Strycharz* v. *Cady*, supra, 323 Conn. 566, and *Wisniewski* v. *Darien*, 135 Conn. App. 364, 373, 42 A.3d 436 (2012), "for the proposition that, in the absence of an explicit written directive, the testimony of a municipal official may be sufficient to establish the existence of a ministerial duty." *Ventura* v. *East Haven*, supra, 330 Conn. 640 n.14. We then stated: "*Strycharz* and *Wisniewski* bear no resemblance to [*Ventura*], however, because, in both cases, the testimony relied on to establish the ministerial duty *did so unequivocally and was elicited directly from the municipal official alleged to have breached that duty, or from that person's direct supervisor*. See *Strycharz* v. *Cady*, supra, 566 ('the deposition testimony of [the superintendent of schools], who testified that [the school principal] had a duty to assign school staff members to different posts, including the bus port, and that he lacked the discretion not to do so . . . provided a sufficient basis to conclude that school administrators had the ministerial duty to assign staff members to monitor students throughout the school' . . .); *Wisniewski* v. *Darien*, supra, 376–77 ('[i]n this case . . . the plaintiffs provided evidence through [the tree warden's] own testimony that he had a nondiscretionary duty to inspect the trees on the town's right-of-way in front of the property'). No testimony was elicited by the plaintiff in [*Ventura*] that was even remotely comparable to the testimony elicited by the plaintiffs in *Strycharz* and *Wisniewski* concerning the existence of an unwritten municipal rule or policy." (Emphasis added.) *Ventura* v. *East Haven*, supra, 640 n.14.

We conclude that *Ventura* is not controlling in the present case. First, viewed in the light most favorable to the plaintiff, Maldonado's testimony "unequivocally" established a lack of discretion in this case, in contrast to that of the police lieutenant in *Ventura*, which expressly acknowledged a discretionary component

with respect to East Haven police officers' implementation of the towing policies at issue.[16] Second, and most significant, like the school superintendent in *Strycharz* v. *Cady*, supra, 323 Conn. 566, Maldonado qualified by rank and experience to be Curry's direct supervisor, despite the fact that he was not specifically assigned to that position; he was employed as a supervisor of patrol officers in the city's police department at all relevant times in this case and, in fact, responded to the scene of the collision between Curry and the plaintiff. Put differently, Maldonado's employment with the city's police department gave him sufficient knowledge, training, and experience with respect to its policies and practices to render his testimony relevant to establish the existence of a ministerial duty.

We also emphasize that our conclusion in the present case is consistent with our recent decision in *Borelli* v. *Renaldi*, supra, 336 Conn. 1, which held that the decision of a police officer for the town of Seymour to pursue a motorist who had fled when the officer attempted to stop him for having illegal underglow lighting was discretionary under § 14-283 and the applicable state and municipal pursuit policies. See id., 5–6, 23. Specifically, we held in *Borelli* that, in the context of an officer's decision whether to pursue, the "due regard" language of § 14-283 (d) did not impose a ministerial duty on the officer, observing that, "[b]y its very definition . . . the duty to act with due regard is a discretionary duty." (Emphasis omitted.) Id., 15. We also followed *Coley* v. *Hartford*, supra, 312 Conn. 165–66,[17] and relied on the relevant language of the Statewide Policy, which "contemplates that officers will exercise their judgment and discretion in giving due regard to the safety of all persons and property when determining whether to engage a pursuit." *Borelli* v. *Renaldi*, supra, 16. We distinguished much of the Statewide Policy language that "provides detailed rules governing the conduct of the pursuit"; id., 20; see Regs., Conn. State Agencies §§ 14-283a-1 through 14-283a-4; such as requiring that the "pursuing officer 'activate appropriate warning equipment,'" from the multifactored "determination of whether to pursue." (Emphasis omitted.) *Borelli* v. *Renaldi*, supra, 20; see also id., 22 (discussing similar discretionary language in Seymour pursuit policy that "directs officers to weigh 'many factors' in determining whether to initiate a pursuit"). Consistent with the majority's emphasis on the discretionary nature of the policies governing the decision to pursue, a concurring opinion in *Borelli* emphasized that "there are certain portions of the town and statewide policies governing the manner of pursuit that are phrased in a manner that is susceptible to being read as imposing a ministerial duty, such as mandating the use of emergency lights and sirens during the pursuit and requiring officers to discontinue pursuit when directed by a supervisor, or precluding certain units from engaging in pursuit." Id.,

57 n.18 (*Robinson, C. J.*, concurring). That concurring opinion cited with approval *Mumm* v. *Mornson*, 708 N.W.2d 475 (Minn. 2006), in which the Minnesota Supreme Court rejected the argument "that all police conduct in emergency situations is discretionary and thus entitled to official immunity unless it is [wilful] or malicious." Id., 492; see *Borelli* v. *Renaldi*, supra, 58 n.18 (*Robinson, C. J.*, concurring). The Minnesota court "recognize[d] that the doctrine of official immunity is a complex and difficult area of law that must be applied to [ever changing] fact patterns and governmental policies," and emphasized the distinction between pursuit policies that "reserved substantial discretion for police officers" from those that contain "express dictates" and limit officers' "independent exercise of judgment." *Mumm* v. *Mornson*, supra, 492–93. In contrast to the multifactored, discretionary analysis at issue in *Borelli*, the particular roadblock and dirt bike policies in the present case present the bright lines that render an officer's duty ministerial.

Finally, we acknowledge the defendants' argument that "[p]ersonal and municipal liability for an officer's use of discretion on patrol would hamper [officers'] ability to perform their duties as caretakers of the public." Although our case law repeatedly emphasizes the broad discretion generally afforded to police officers in the performance of their duties; see, e.g., *Coley* v. *Hartford*, supra, 312 Conn. 164–65; the defendants' arguments in the present case verge on "ask[ing] too much in urging us to conclude that *all* police conduct in emergency situations is discretionary. We do not read our previous cases as establishing the broad proposition that *all* police conduct in emergencies is discretionary, even in the face of binding police department policies. Indeed, [although] often necessary, police pursuits by definition are emergency situations, jeopardizing the safety and lives of those involved, as well as innocent bystanders. We recognize that governmental entities have the authority to eliminate by policy the discretion of their employees, as was done [by the policies at issue in the present case]. By adopting policies specifically intended to apply to pursuits, the [state and the city] implicitly [recognize] that officers should not have unfettered discretion in emergency situations." (Emphasis added.) *Mumm* v. *Mornson*, supra, 708 N.W.2d 493. Accordingly, we conclude that the trial court improperly granted the defendants' motion for summary judgment on discretionary immunity grounds.[18]

The judgment is reversed and the case is remanded with direction to deny the defendants' motion for summary judgment and for further proceedings according to law.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** October 15, 2020, the date that this decision was released as a slip

opinion, is the operative date for all substantive and procedural purposes.

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we granted the plaintiff's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) *Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by*: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) *negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law*." (Emphasis added.) See also General Statutes § 52-557n (b) (providing specific immunities for certain acts).

[3] As the trial court noted, "[a] 'quad' is a four-wheeled vehicle also known as an 'all-terrain vehicle' . . . ."

[4] Curry testified at her deposition that she had witnessed the group of dirt bikes and quads operating recklessly in a way that "consumed the entire road," and that, *prior to pulling into the southbound lane*, she had activated her cruiser's emergency lights and siren both to warn other drivers. Curry intended to execute a U-turn in order to stop the group and to advise her dispatcher by radio of their direction of travel.

In contrast, Anthony Maebry, a neighborhood resident who witnessed the collision from outside his nearby residence, testified that Curry's cruiser was not operating with emergency lights or sirens when she pulled into the southbound lane. Raymond Jones, a friend who was biking with the plaintiff, and Martese Allen, another biker who was in front of a nearby package store and also witnessed the collision, testified consistently with Maebry, stating that Curry activated her lights and sirens only *after* the collision had occurred. Viewing the evidence in the light most favorable to the nonmoving plaintiff, we adopt this version of the facts for purposes of this appeal.

[5] Curry subsequently went to the hospital and handed the plaintiff's mother a summons for the plaintiff for numerous motor vehicle offenses, including operating without a license and insurance.

[6] General Statutes § 14-230 provides in relevant part: "(a) Upon all highways, each vehicle . . . shall be driven upon the right, except (1) when overtaking and passing another vehicle proceeding in the same direction, (2) when overtaking and passing pedestrians, parked or standing vehicles, animals, bicycles, electric bicycles, mopeds, scooters, electric foot scooters, vehicles moving at a slow speed, as defined in section 14-220, or obstructions on the right side of the highway, (3) when the right side of a highway is closed to traffic while under construction or repair, (4) on a highway divided into three or more marked lanes for traffic, or (5) on a highway designated and signposted for one-way traffic. . . ."

Although § 14-230 has been amended by the legislature since the events underlying the present case; see, e.g., Public Acts 2019, No. 19-162, § 5; Public Acts 2018, No. 18-165, §7; these amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[7] General Statutes § 14-236 provides in relevant part: "When any highway has been divided into two or more clearly marked lanes for traffic, (1) a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has ascertained that such movement can be made with safety . . . ."

[8] General Statutes § 14-242 provides in relevant part: "(a) No person shall turn a vehicle at an intersection unless the vehicle is in a proper position on the highway as required by section 14-241, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a highway unless such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner provided in section 14-244.

* * *

"(e) The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or within the area formed by the extension of the lateral lines of the private alley, road or driveway across the full width of the public highway with which it intersects, or so close to such intersection of public

highways or to the area formed by the extension of the lateral lines of said private alley, road or driveway across the full width of the public highway as to constitute an immediate hazard. . . .”

Although § 14-242 has been amended by the legislature since the events underlying the present case; see, e.g., Public Acts 2019, No. 19-162, § 8; Public Acts 2018, No. 18-165, § 10; these amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[9] The plaintiff also alleged that Curry (1) negligently pulled her vehicle into the travel path of the dirt bikes, (2) “was inattentive and failed to properly operate her police cruiser in a safe and prudent manner,” (3) operated her cruiser “at a rate of speed that was unreasonable, improper, and excessive under the circumstances,” (4) “failed to sound her horn or [to] give the plaintiff a timely warning, or any warning whatsoever, before pulling into his lane of traffic,” (5) “failed to slow her vehicle while approaching oncoming traffic while driving in the wrong lane,” and (6) failed to “take corrective action by either turning her vehicle to the left or the right, or decelerating by putting on her brakes when a collision with oncoming traffic was likely to occur.”

[10] General Statutes § 14-283 provides in relevant part: “(a) As used in this section, ‘emergency vehicle’ means any ambulance or vehicle operated by a member of an emergency medical service organization responding to an emergency call, any vehicle used by a fire department or by any officer of a fire department while on the way to a fire or while responding to an emergency call but not while returning from a fire or emergency call, any state or local police vehicle operated by a police officer or inspector of the Department of Motor Vehicles answering an emergency call or in the pursuit of fleeing law violators or any Department of Correction vehicle operated by a Department of Correction officer while in the course of such officer’s employment and while responding to an emergency call.

“(b) (1) The operator of any emergency vehicle may (A) park or stand such vehicle, irrespective of the provisions of this chapter, (B) except as provided in subdivision (2) of this subsection, proceed past any red light or stop signal or stop sign, but only after slowing down or stopping to the extent necessary for the safe operation of such vehicle, (C) exceed the posted speed limits or other speed limits imposed by or pursuant to section 14-218a or 14-219 as long as such operator does not endanger life or property by so doing, and (D) disregard statutes, ordinances or regulations governing direction of movement or turning in specific directions.

“(2) The operator of any emergency vehicle shall immediately bring such vehicle to a stop not less than ten feet from the front when approaching and not less than ten feet from the rear when overtaking or following any registered school bus on any highway or private road or in any parking area or on any school property when such school bus is displaying flashing red signal lights and such operator may then proceed as long as he or she does not endanger life or property by so doing.

“(c) The exemptions granted in this section shall apply only when an emergency vehicle is making use of an audible warning signal device, including but not limited to a siren, whistle or bell which meets the requirements of subsection (f) of section 14-80, and visible flashing or revolving lights which meet the requirements of sections 14-96p and 14-96q, and to any state or local police vehicle properly and lawfully making use of an audible warning signal device only.

“(d) The provisions of this section shall not relieve the operator of an emergency vehicle from the duty to drive with due regard for the safety of all persons and property. . . .”

As with §§ 14-230 and 14-242; see footnotes 6 and 8 of this opinion; § 14-283 has been amended by the legislature since the events underlying the present case. See, e.g., Public Acts 2014, No. 14-221, § 1. These amendments, however, have no bearing on the merits of this appeal, and, in the interest of simplicty, we refer to the current revision of the statute.

[11] See footnote 18 of this opinion for our discussion of the plaintiff’s other claims with respect to the existence of a ministerial duty.

[12] Given our conclusion that a ministerial duty exists in this case, we need not reach the plaintiff’s claim that, even if the duty were discretionary in nature, he was an identifiable victim subject to imminent harm for purposes of that exception to discretionary act immunity. See, e.g., *Borelli* v. *Renaldi*, supra, 336 Conn. 26–27.

[13] Beyond this policy, Maldonado testified that the better practice with respect to interacting with dirt bikes or quads was to follow one and to approach when it stopped at a traffic light or when the operator was stopped to speak with a pedestrian because the engine would often shut off at that

time, making it safer to approach.

[14] We note that Curry acknowledged at her deposition that the city had a no pursuit policy in effect at the time of the collision in July, 2011. Indeed, the sergeant who responded to the collision had "strongly wanted to make sure that [Curry] was not in pursuit of the dirt bikes and vehicles and quads."

[15] The lieutenant had testified that "unregistered vehicles are routinely towed in East Haven" and that, "based on his training and experience, he did not let anybody drive off in an unregistered vehicle following a traffic stop, and that the general rule among police officers is to tow and impound such vehicles, albeit with certain exceptions." (Internal quotation marks omitted.) *Ventura* v. *East Haven*, supra, 330 Conn. 640. We stated, however, that the "mere fact that an officer, either by training or experience, ordinarily responds to a situation in a particular manner does not transform his or her response into a ministerial duty." Id., 640–41.

[16] Moreover, the language in footnote 14 of *Ventura* with respect to the "direct supervisor" was nonbinding dictum because it was not necessary to the holding in that case with respect to the effect of the lieutenant's testimony. See *Ventura* v. *East Haven*, supra, 330 Conn. 640 n.14; see also, e.g., *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009).

[17] In *Coley* v. *Hartford*, supra, 312 Conn. 150, we concluded that General Statutes (Rev. to 2013) § 46b-38b (d), which directs officers who report to the scene of a report of domestic violence, upon determining that no cause exists for arrest, to remain "at the scene for a reasonable time until, in the reasonable judgment of the officer, the likelihood of further imminent violence has been eliminated," imposed a discretionary duty, given that the phrases "reasonable judgment" and "reasonable time" inherently require the exercise of judgment and discretion. (Internal quotation marks omitted.) Id., 152 n.1, 165–66.

[18] Given our conclusion that a genuine issue of material fact exists with respect to the factual predicate for whether Curry violated a ministerial duty under the state and city pursuit policies, we need not consider the plaintiff's claims that (1) beyond emergency operation in accordance with § 14-283, the state traffic statutes impose ministerial obligations, and (2) as a corollary, nonemergency operation of a motor vehicle is not a discretionary act. See *Borelli* v. *Renaldi*, supra, 336 Conn. 5 (specifically declining to "address the question of whether governmental immunity applies to routine driving of emergency response vehicles by municipal actors"). This is particularly so given that a genuine issue of material fact exists as to whether Curry had activated her emergency lights and sirens and engaged in the emergency operation of her cruiser at the time of the collision. See footnote 4 of this opinion. Because the Statewide Policy, the General Order, and Maldonado's testimony were sufficient to establish the existence of a ministerial duty in this case, we need not consider further this issue concerning the effect of the state traffic statutes to establish a ministerial duty in this case. But see *Daley* v. *Kashmanian*, 193 Conn. App. 171, 187–89, 219 A.3d 499 (2019) (concluding that Hartford police officer engaging in surveillance operations in "soft car" lacking lights and sirens was engaged in discretionary act and did not have ministerial duty to comply with motor vehicle statutes but "declin[ing] to hold that, *under all circumstances*, a municipal police officer operating a motor vehicle is engaged in discretionary conduct, thereby immunizing the officer and municipality from damages arising from all violations of motor vehicle statutes" (emphasis in original)), cert. granted, 335 Conn. 939, 237 A.3d 1 (2020).